Affirmed on appeal to the United States circuit court.

---

### UNITED STATES *v.* PACIFIC EXPRESS CO.

*(District Court, D. Kansas.* April Term, 1883.)

1. EXPRESS COMPANY—FAILURE TO DELIVER MONEY.
    In an action against an express company for the loss of money delivered to it, to be carried to and redelivered at a certain place, it is only necessary to prove the delivery of the money to the company and its failure to redeliver the same.
2. SAME—BURDEN OF PROOF.
    In such a case the burden of proof rests upon the plaintiff, and he has to establish by a preponderance of evidence that the allegations in his petition are true.
3. JURY JUDGES OF CREDIBILITY OF WITNESSES—TESTIMONY OF EMPLOYES.
    The jury are the exclusive judges of the credibility of witnesses, and in considering the weight to be attached to the testimony of certain witnesses, they may take into consideration the fact that they are the employes of the party in whose behalf they are testifying.
4. SAME—CIRCUMSTANTIAL EVIDENCE.
    If circumstantial evidence preponderates, or overthrows or overcomes, in the opinion of the jury and in their judgment, the direct positive testimony of witnesses, they have the right to take that kind of evidence and give it all the weight it is entitled to.

At Law.

*J. R. Hallowell,* U. S. Dist. Atty., for plaintiff.

*Everest & Waggener,* for defendant.

FOSTER, J., *(charging jury orally.)* This case, as presented by the evidence, is essentially one resting upon facts, and upon the facts as

established by the evidence you are to render your verdict. The United States alleges in its petition that on or about the ninth of January, 1880, at the city of Leavenworth, by its authorized agent, it placed in the custody of the defendant, the Pacific Express Company, an iron safe, containing moneys of the United States to the amount of about $26,000, for the purpose of having the same shipped to Wellington, in the state of Kansas, and there to be delivered to Maj. Broadhead, and that said express company received said safe, with its said contents, for the purpose of conveying the same from the place of of shipment to its destination, and that during the time said safe was in the custody of said express company there was taken from the safe the sum of $20,000, and to recover that amount this suit is brought. The defendant company admits receiving said safe, but avers that it had no knowledge of its contents except statements of plaintiff's agent, Maj. Broadhead,—(if I make any mistake about the pleadings I hope counsel will correct me: I want to give the general purport,)—as appears from the bill of lading or receipt; that it had no knowledge of the contents of the safe, except from the statements of Maj. Broadhead; and avers that it delivered said safe and its contents at its destination, to Maj. Broadhead, the same as when it was received by it at Leavenworth. This makes a plain issue between the parties. The plaintiff alleges that the defendant did not deliver the safe with all its contents to Maj. Broadhead; the defendant claims that it did so deliver it. As a legal proposition, it is not controverted that the law holds the express company responsible for the safe delivery of the property at its destination, and there is nothing claimed or shown in this case to relieve it of that responsibility.

The express company fixes its charges for such services with this legal liability attached, and to compensate itself for the services rendered and the risk incurred in and about the business, it is governed largely by the value of the articles intrusted to its care. The greater the value, the greater the risk and responsibility incurred in its safe carriage and delivery. So far as this case is concerned, and the liability of the express company extends if it received the $20,-000 package and failed to deliver it, it is not material what became of it. It matters not who took it, or when or how it was taken or stolen,—whether stolen by an employe of the defendant or by a stranger. The plaintiff is merely required to show that the money was delivered to the express company, and that it was not redelivered by that company. To put it brief, was the money delivered to

the express company? If so, was it returned? The safe and contents were in the possession of the defendant company when it was turned over to its agent, Mr. Martien, at Maj. Broadhead's office; from that time its liability commenced.

Your first inquiry would naturally be to determine the contents of the safe,—whether the $20,000 package was in it when delivered to defendant's agent; and upon that point I will briefly refer to the principal evidence; that is, as to the contents of that safe when delivered to the defendant company.

Maj. Broadhead and his clerk, Mr. Bassett, testify that the $20,000 package, together with other packages of money, amounting in the whole to the sum of $25,900, was placed in the safe. Maj. Broadhead testifies that he placed it in the safe with his own hands. Mr. Bassett says he was present and saw Maj. Broadhead put the $20,000 package in the safe. Here are two parties swearing positively to the money being placed in the safe. Maj. Broadhead tells you when and how and at what time he drew this money from the First National Bank; that he drew at several times on several different checks; that he first drew $15,000 from the bank and then $5,000, and put them together, making this $20,000 package. My memory is, he says he drew it on the seventh of January; that he took it back after he had done up that package and placed it in the bank for safe-keeping. Subsequently he drew the rest of it and did it up in packages; that on the day this safe was turned over to the defendant company he says he went to the bank and got the $20,000 package, and, as before stated, in the presence of Mr. Bassett, placed it in the safe. In corroboration of his testimony as to the drawing of the money and the delivery of the $20,000 package into the charge of the First National Bank for safe-keeping, his testimony is corroborated by Mr. Graybill, cashier of that bank. He corroborates him in reference to these drafts, drawing the money and placing the $20,000 bundle or package in the bank again for safe-keeping, and that he took it out at the dates he has stated. Now this is the evidence and proof as to the drawing of this money from the bank, the doing up of the package, and the placing of this money in the safe.

Now, Maj. Broadhead and Mr. Bassett, his clerk, testify, after detailing to you how the money was placed in the safe,—the smaller packages first, etc., and the $20,000 package on top—how the safe was closed and locked; how it was sealed; after putting his escutcheon over the key-hole, he placed the screw in to hold it in its place; then taking red sealing-wax, Maj. Broadhead says he held the

candle and Mr. Bassett used the wax, melting it and dropping it on the escutcheon, and then Maj. Broadhead taking his seal, with the initials, "J. A. B.," stamped it, thus making a seal upon the escutcheon. They testify the wax extended over and adhered to the safe, thus holding the escutcheon in its place; that previous to the putting up of this money, or about that time,—at any rate, the same day,—he mentioned to the express agent that he would have a safe to ship, and the agent had agreed to send up for it at his office; that is testified to also by the express agent; that he delayed somewhat in sending for the safe, and Mr. Bassett was sent down to the express office to hurry up the wagon, as they were tired waiting. Maj. Broadhead tells you, and in that he is corroborated by Mr. Bassett, that upon Mr. Bassett's returning to the office and saying the wagon would not be there until 1 o'clock, he told him to go to his lunch, and he would stay there, and Mr. Bassett absented himself for a short time, returning again about 1 o'clock. Mr. Bassett and Maj. Broadhead testify that the agent, Mr. Martien, came up with the express wagon for the packages. Maj. Broadhead testifies that he had become somewhat impatient waiting; he says to the agent, Mr. Martien, taking hold of the end of the safe, "Here is my safe and there is my bedding," and started off to his dinner. Mr. Bassett substantially corroborates that. Then Mr. Bassett testifies, and Mr. Martien has testified to the same thing substantially, that he called in this colored boy, or rather, before he called in this colored boy, that he went out and looked for somebody to help him take this package out, and he went down to Maj. Gibbons' office, expecting to find the messenger there, or the porter he had in his service; he did not find him; he then came back upstairs; then raised the window in Maj. Broadhead's office, and called out to this colored boy, Davis, to come up and help him carry the safe down stairs. As my memory serves me, Mr. Bassett's testimony and Mr. Martien's are substantially the same on that point about the colored boy going up and helping down these goods. Passing that by, the safe was taken down and delivered to the express company and placed in their office, as the evidence would show. I think the evidence of Mr. Martien and Mr. Shepperd, corroborated to some extent by Mr. Lockwood, is that the safe was all right—this seal perfect; Maj. Broadhead's seal was all right when it was delivered in the office, placed in the office about 1 o'clock in the afternoon, and Maj. Broadhead came in subsequently and got his bills of lading.

Now, so much upon that question,—and I have digressed a little upon that point,—but so much in main as to what was placed in that

safe. It was upon that point I desired to call attention in this connection. As to the $20,000 having been placed in the safe, I have briefly reviewed the evidence on that point. This information seems to rest, so far as positive proof is concerned, upon the statements of Maj. Broadhead and Mr. Bassett, his clerk. There is no evidence offered here to show that such were not the contents of the safe, or that their testimony is not correct.

After passing from the question of what was in the safe,—the next inquiry would be, was the package in the safe when delivered to Maj. Broadhead at Wellington? If you should find that the $20,000 was placed in the safe, was it in the safe when delivered to Maj. Broadhead at its destination at Wellington? The safe was not opened until it reached Fort Reno, and when opened the package of $20,000, under the testimony of Maj. Broadhead and Mr. Bassett, was not in the safe. They testify that when the safe was opened at Fort Reno the $20,000 was not in the safe. You have heard the testimony as to Maj. Broadhead receiving this safe at Wellington and giving his receipt for it; the manner in which it was transported to Fort Reno, by government transportation, in charge of an escort of troops. The testimony, as offered in this case and substantiated by both sides, at the time the safe was delivered to Maj. Broadhead at Wellington, there was a green seal put on, and placed all over his seal which he had placed on the safe; that his seal had been broken or mutilated, and that the agent of the defendant company had placed the seal of the company over this violated seal or broken seal, with green wax, and stamped it with the seal of the company; that was done at Atchison; and the testimony of Maj. Broadhead and his clerk is that the safe remained in that condition, with this green seal intact, from the time they took it from Wellington until they opened it at Fort Reno. This is testimony—I mean the positive direct testimony of those two gentlemen—of the contents of the safe when it was delivered to the express company, and what the contents of the safe were when it was redelivered by the express company to Maj. Broadhead. This is the testimony that is offered by the government, in this case, to show how it was when it was delivered to the express company and when it was received; because they claim the green seal was intact from the time it was received by them at Wellington, and on that there is no evidence on the part of the defense at all, and there is no use of going where there is no evidence. That that green seal remained the same, from the time it was received by Maj. Broadhead, at Wellington,

until opened at Fort Reno, is uncontradicted. Here, then, is the
positive testimony of two witnesses, unimpeached and uncontra-
dicted on the main point, to the fact that the money was in the
safe when turned over to the express company, and that it was
not in the safe when delivered back by the company. If you believe,
from the testimony, this to be true, there is no escape from liability
for the express company, and you are bound to find for the plaintiff,
if you find their testimony to be true. Had the safe been delivered
back to Maj. Broadhead, with his seal intact on the escutcheon, it
would have been well-nigh conclusive that the contents of the safe
were the same as when received by the company. But, unfortunately
for the defendant, such, as it seems from the evidence, was not the
fact. The seal had been broken, and the agent of the company at
Atchison had placed the seal of the company over the broken muti-
lated seal of Maj. Broadhead. Whether it was so far broken as to
release the escutcheon is not clear, and upon that point Mr. Lock-
wood, who was the agent of the company, en route from Leavenworth
to Atchison, testified, in the first part of his deposition, that the es-
cutcheon was in its place, and that he could not state whether it was
still in its place or held there by the seal. In the latter part of his
deposition he expresses the opinion or belief that the wax seal, or a por-
tion of the seal, still adhered to the safe, and held the escutcheon in
its place, after a critical examination at Atchison. I think that is
the substance of his deposition.

Now, gentlemen of the jury, passing by positive evidence as to the
contents of this safe, etc., what was it when it was delivered back?
And, looking at these other circumstances, it has a material bearing
in the case as to whether that seal was so far broken and destroyed
that it no longer held the escutcheon at all, or whether it answered
as a seal to hold it in its place. You have heard the testimony as
to how this escutcheon was placed on the safe; you have seen it
placed on the safe with the screw screwed down. You have seen and
heard from the testimony that this screw which was placed on the
safe, to some extent, at least, held the escutcheon. It is for you to
determine whether it held the escutcheon in its place without the aid
of the seal. And you are to determine from the evidence offered in
this case by Mr. Lockwood whether or not he made such an investi-
gation or examination of that seal on that escutcheon as to determine
whether it was held in its place by reason of the screw, or whether he
examined it sufficiently to be able to state that it was held there by the
seal. It is proper for me to say in this connection that the testimony

of Mr. Lockwood, tending to support, as it does, a theory in this case which, if true, contradicts or establishes a state of facts contrary and inconsistent with the facts claimed by the plaintiff, and upon which they offered positive and direct testimony, situated as he was as an agent and employe of the company, having made, as he stated, but a slight or uncertain investigation as to the condition of that seal, his testimony should be taken with considerable caution upon that point.    He was an employe of the company; he found the seal which covered this money, $26,000, or about $26,000, marked plainly upon the tag on this safe, violated and broken.    He took the responsibility, instead of making an investigation as to whether that had been violated intentionally or by accident, of covering it up with the seal of the company.    He and Mr. Ivers together, still another employe of the company, placed the seal of the express company over this mutilated seal.    I simply recall these facts; I conceive it my duty to speak to you of the relative weight and importance of the testimony in this case.    If the seal had been violated or broken intentionally by some party seeking to reach the contents of the safe, it would not be a rash presumption to conclude that they effectually violated the seal—effectually broke that seal.    I say, if it should appear and you are satisfied from the evidence it was intentionally violated, it would not be rash from the evidence to conclude that the purpose was effected.    If it was an accident, it might or might not have been effectually violated.    And it may be that that question will come before you for your consideration; that is, the question as to how this seal became broken.    The testimony all concurs on the part of the plaintiff and the defendant that at the time that safe was placed in the express company's office Maj. Broadhead's seal was intact.    Mr. Shepperd, you will remember, who was agent, testified positively that when that safe was sitting in his office that the seal was intact.    I think Mr. Lockwood says if there had been anything the matter with the seal he would have noticed it.    So I think we may assume up to that point the seal was intact.    Mr. Lockwood testifies when that safe was placed on the car, as soon as he drew it back where the light was thown on it he discovered the seal was broken.    He testified that he made a careful search, and that no part of the sealing-wax could be found in the car anywhere about.

Now, gentlemen of the jury, if the testimony of Mr. Shepperd is true, when that safe was in his office the seal was intact, and the testimony of Mr. Lockwood is true, that when that safe was placed on the car that seal was broken,—I say, if these witnesses tell the truth,

the conclusion is almost irresistible that that seal was broken from the express office to the train, or else broken in the express office after the time Mr. Shepperd says the seal was perfect. Or it might have been broken putting it into the car. I will reach that directly.

You have heard the testimony of Mr. Martien, and the testimony of Mr. Hall, about transferring that safe from the express office to the car. They concur in their testimony, that that safe was the last thing placed on the express wagon—that safe and the safe of the express company. They say it was placed in the rear end of the wagon and was pushed in; that they drove down directly to the depot, and that they unloaded the safe upon the truck, which was wheeled to the north end of the depot,—the train was then approaching close by,—and that they two together picked up that safe and raised it up into the car. Now, where was that seal broken? How was it broken? You are to investigate that subject. It seems from the evidence of these drivers that nothing was placed on top of that safe going from the express office to the depot. Nothing placed on top; no baggage or anything of that kind; that nothing was piled on top of it on the truck. They lifted the safe and threw it on the edge of the car with some force, it being heavy. It is for you to determine from the evidence, gentlemen, whether or not that seal was broken, and when and where it was broken; whether it could have been broken raising the safe into the car and striking it on the car, or whether if so broken a part of the sealing-wax would not have remained on the safe or be in the car. These are all matters for your consideration. Mr. Martien testifies (I will not say positively—I think, at any rate) the seal was all right when they put it into the car.

Now, gentlemen, this is in brief and substantially what you have before you in reference to the breaking of that seal. As I have said before, Mr. Ivers testified substantially as Mr. Lockwood. He was agent of the company at Atchison. I make the same remarks on that as to Mr. Lockwood's testimony. You are to take that for all it is entitled to, and determine that question. The burden of proof in this case rests upon the plaintiff, as in all civil cases the plaintiff has to establish, by a preponderance of the evidence, that the allegations in the petition are true. I have gone over the testimony in regard to the seal and circumstances to some extent. Should you believe the positive testimony of the witnesses who have testified as to the contents of the safe when delivered or when given to the express company, or when it was returned, it is quite likely these facts may be somewhat immaterial. However, if you choose to pass

over that and make further investigation into these matters, I have briefly attempted to call your attention to the testimony and the salient points in the case. With that, gentlemen of the jury, you may take the case and decide it. It is a case of no little importance. I trust that you will feel the responsibility that is thrown upon you in reaching just and proper conclusions, from all the evidence in this case, fairly and without violence to the evidence, and without violence to your consciences, and render a verdict that you think the evidence fairly justifies in this case.

You are the exclusive judges of the credibility of the witnesses. You have the right to consider all the circumstances in the case. If circumstantial evidence preponderates, or overthrows or overcomes, in your opinion and in your judgment, the direct positive testimony of the witnesses, you have the right to take that kind of evidence and give it all the weight it is entitled to.