[No. 7406.]

## CITY OF VICTOR v. SMILANICH.

1. WITNESS—*Competency—Infant*—Under Rev. Stat., Sec. 7273, not all children under ten years of age are made incompetent as witnesses, but only such as "appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." The question of the competency of the child is addressed to the sound discretion of the trial court, and its determination will not be disturbed unless it appears from the examination of the child on the *voir dire*, or from his testimony, that the court clearly abused its discretion. Where it appeared that a boy of six and a half years understood that he was required to tell the truth, and could be punished if he did not, that he had a fair understanding of the obligation of an oath, and of the facts which he detailed, *held*, that no abuse of discretion was committed in receiving his testimony.

2. EVIDENCE—*Testimony of Witness Indirectly Contradicted*—The positive testimony of a witness is not necessarily accepted as true, merely because not directly contradicted. The contradiction may be by circumstances, or by the testimony of another witness, inconsistent with that of the first. In such case the court or jury may exercise a judgment as to the probative effect of the evidence. Where such conflicting testimony appears upon the whole record to justify a well. grounded inference by reasonable men, the question in dispute should be left to the jury.

*Appeal from Teller District Court.*—Hon. JOHN W. SHEAFOR, Judge.

Mr. EDWARD J. BOUGHTON and Mr. W. N. ALTER, for appellant.

Mr. J. E. FERGUSON and Mr. WM. MELLIN, for appellee.

Appellee, as plaintiff, by his next friend brought suit against the city of Victor to recover damages sustained by the alleged negligence of the latter. The trial resulted in a verdict and judgment in favor of plaintiff, in the sum of $7,500, from which the defendant has appealed.

The complaint alleged, in substance, that plaintiff, at the time the injury was sustained, was about four and a half years. of age; that at this time the city was engaged in extending its municipal water system by constructing a ditch through the residence district adjacent to the city, employing laborers for that purpose, who, with tools and explosives, were removing rock and soil from the ditch; that plaintiff resided with his parents in the vicinity of the ditch; that many other small children resided in the same neighborhood; that defendant's employes engaged in excavating the ditch, carelessly and negligently permitted a box of explosive caps, intended to explode with great force when struck with a hard instrument, to remain where the children of the neighborhood, including plaintiff, could gather them up; that these caps were of an attractive appearance, and enticing to plaintiff as play-things; that plaintiff and one of his play-mates, by the name of Willie Vranesich, not knowing the dangerous character of the caps, and having access thereto, took a number of the caps; that plaintiff held one of them in his hand, and Willie, not knowing the danger to which he and the plaintiff were exposed, struck the cap with a rock, causing it to explode, whereby plaintiff was grievously injured, in particulars specified.

For answer the defendant, so far as material to consider, denied the negligence charged; that is, denied that its employes negligently and carelessly left explosive caps where plaintiff and other children would have access to them.

The evidence established that plaintiff, at the time of his injury, was of the age charged in the complaint, and that his play-mate, Willie, was about six years of age; that Peter was injured by the explosion of a cap commonly used to explode giant powder, and that thereby his right hand was torn from his wrist, the bone in the thigh of his right leg broken, and his flesh and muscles badly lacerated. The evidence further establishes that defendant was engaged in excavating the trench for its water works system, and that in prosecuting this work,

its employes used explosives, including caps of the character in question, for the purpose of exploding giant powder, and that such caps will explode when struck by a hard substance. It also appears that part of this work was being done by contractors, who had contracts from the city, and gratuitously by owners of property in the vicinity, all of whom used explosives, for whose conduct, however, the defendant was not responsible. The tools and explosives used by the employes of the city were kept in a shed near the residence of the parents of Peter, which was kept locked, the key being carried by one of them. Peter's mother testified that on the day her boy was injured, and shortly before the injury, she heard shooting in the trench. The employes of the city were engaged in working in the ditch at this time. These parties admitted that they kept explosives in the shed mentioned, which were used in excavating the ditch; that a few days prior to the time Peter was injured, they had brought to their work a round tin box about two-thirds full of caps. A full box contains 100 caps. There was testimony to the effect that other parties who had been engaged on the ditch, either as contractors or on their own account, had completed their work nearly a month previous to the injury, and that they had not left any caps on the work.

Willie was called as a witness for the plaintiff, and over the objection of the defendant, was permitted to testify. The objection urged was his age, which, at the time of the trial, was about six and a half years. On his *voir dire* he was examined by counsel for both sides, and by the court, by a line of questions intended to elicit his understanding of the obligations of an oath, and also his intelligence, after which the objection was overruled. From this examination it appears he had some idea of the obligation of an oath; that he understood he could be punished if he did not tell the truth; and that he was fairly intelligent for a boy of his age. He testified that he and Peter found the caps in a tin box just outside the door of the shed, where the tools and explosives were kept

by the city's employes engaged on the ditch, and just prior to the time Peter was injured, and that Peter held one of the caps in his hand, which the witness struck with a rock. Shortly after the explosion about thirty-five caps were taken from Willie's pocket, which he said he found in the box at the door of the shed, and quite a number were found on the ground in the immediate vicinity of where the injury occurred. This witness further testified that he never got caps out of an empty house, nor from under the sidewalk, and that all the caps he ever got, he took from the box by the door of the shed. There was also testimony tending to prove that Willie could not have secured the caps about the residence of his parents, as explosives were not kept there. It appears that the employes of the city could not have used, in the prosecution of their work, but a few caps each day. One of the employes of the city testified that there were no caps in the shed on the day Peter was injured; that neither he nor his co-employe used any explosives on that day; and that he did not leave any caps lying around, or the box containing the caps, at the door of the shed; and that three days before he had taken the unused caps to his house. The testimony of the other employe was to the same effect.

At the conclusion of the testimony on the part of plaintiff, a motion for a directed verdict was interposed by the defendant, which was overruled. A similar motion was interposed by defendant at the time the testimony on both sides was concluded, which was, also, denied. After the verdict the defendant made a motion for a new trial, and also for a judgment *non obstante verdicto,* both of which were overruled.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The contention of counsel for the city is (1) that Willie should not have been permitted to testify; and (2) that the evidence is insufficient to sustain the verdict, because it fails to establish negligence of the city.

Our statute, section 7273, R. S. 1908, provides that "children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly," shall not be witnesses. This provision does not apply to all children under ten years of age, but only to those under that age who "appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." This language clearly implies that the competency of a child as a witness under the prescribed age, is a question addressed to the sound discretion of the trial court to determine. When, therefore, the trial court has determined this question, it will not be disturbed on review, unless it appears from the examination of the child on its *voir dire,* or its testimony, that the trial court clearly abused its discretion.—*State v. Blythe,* 58 Pac. (Utah) 1108; *People v. Swist,* 69 Pac. (Cal.) 223; *Wheeler v. United States,* 16 Sup. Ct. Rep. 93; *State v. Juneau,* 59 N. W. (Wis.) 580; *People v. Walker,* 71 N. W. (Mich.) 641.

From the record before us, it appears the boy understood that as a witness he was required to tell the truth; that he could be punished if he did not, and that he had a fair understanding of the obligation of an oath, and the facts, which he detailed; and hence, it does not appear the trial judge abused his discretion in permitting him to testify. The credibility of the boy as a witness and the weight to be given his testimony, considering his age, was for the jury to consider and determine.

The vital question of fact in the case was, whether the caps which the boys secured were left by the employes of the city at the door of the shed. Counsel for defendant insist this must be resolved in favor of the city, for the reason that the testimony of its employes, to the effect that they did not leave them there or at any place where the boys could have access to them, was not contradicted or impeached. The sufficiency of the evidence to justify the submission of the case to the

jury was determined by the trial court contrary to the contention here, by overruling a motion of defendant for a directed verdict at the conclusion of the plaintiff's testimony, and by also overruling a similar motion when all the testimony was in. The jury resolved the fact in dispute in favor of the plaintiff, and the trial judge refused to disturb this finding by overruling a motion for a new trial, and a motion for a judgment *non obstante verdicto*.

There is testimony that the caps were found by the boys at the door of the shed in which the city's employes stored explosives used in excavating the ditch, and the jury must have found this to be the fact. The employes say they did not leave them there; and although this testimony is not directly controverted, the jury must have determined they did, and the trial judge has ruled that the evidence was sufficient to not only submit this question to the jury, but also sufficient to justify this finding of fact by them. It does not always follow that because positive testimony of a witness is not directly controverted that a jury must treat such evidence as true. A witness may be contradicted by circumstances, as well as by statements of others contrary to his own. In such cases neither courts nor juries are bound to refrain from exercising their own judgment as to the probative value of his testimony.—30 Ency. 1068. There is testimony that the caps were found by the boys in a box corresponding with the one which the employes admitted they purchased containing caps. The number of caps in this box, bearing in mind that thirty-five were found in Willie's pocket which he says he took out of the box, with the number found on the ground immediately after the explosion, tallies approximately with the number not used. There is testimony that the employes were using explosives the morning of the injury, although they deny it. The caps were found where they might have been placed, and inadvertently left, in unlocking and locking the door of the shed. There is evidence that all the explosives used by others in excavating the ditch had been removed about one month previous to Peter's injury.

These are circumstances tending to contradict the positive testimony of the city's employes, for the reason that from the testimony, as a whole, they tend to prove that the caps the boys found belonged to the city, and that it was not altogether improbable they had been left (no doubt, inadvertently,) at the door of the shed by the employes of the city, as no one else would have been likely to leave them at that place. When circumstantial evidence is of a nature from which it can be reasonably inferred that it contradicts the direct and positive testimony of witnesses, it is the province of the jury to determine the weight to which such evidence is entitled.—*United States v. Pacific Express Co.*, 15 Fed. 867. In many instances evidence to establish a fact is circumstantial. If it is of sufficient strength and force, considering the surrounding circumstances and conditions, to justify a reasonable and well-grounded inference, by reasonable men, that the fact in dispute is thus established, the question should be left to the jury to determine.—*C. & F. Lumber Co. v. D. & R. G. R. R. Co.*, 17 Colo. App. 275; *Colo. Midland Ry. Co. v. Snider*, 38 Colo. 351.

Tested by these rules, we think the trial court was right in submitting the question of the alleged negligence of the employes of the city to the jury to determine; and that their finding on the subject is justified by sufficient substantial evidence to sustain it.

The judgment of the district court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL concur.