## No. 12,441.

### WILKINSON v. THE PEOPLE.

Decided November 4, 1929. Rehearing denied November 25, 1929.

Mr. Frank S. Morrison, Mr. Dallas O. Plummer, Mr. Samuel D. Menin, for plaintiff in error.

Mr. Robert E. Winbourn, Attorney General, Mr. E. J. Plunkett, Assistant, for the people.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Ernest Wilkinson, hereinafter referred to as defendant, was convicted of, and sentenced for, the crime of rape. He assigns error, sues out this writ and asks for a supersedeas.

The information contains two counts, the first charging rape by force, and the second, rape upon a person "incapable through unsound mind of giving legal consent," but inasmuch as the verdict returned on the first

count was "not guilty," only the second count need be considered.

There are 18 assignments of error, which for convenience we will group as follows: (1) Refusal to quash information, and, at the conclusion of the people's case, to direct a verdict for the defendant; (2) permitting the injured party to be sworn and testify; (3) permitting the wife of the defendant to be sworn; (4) improper conduct of the district attorney.

The defendant, who is the stepfather of the victim, and his wife, mother of the victim, were married about eleven years before the commission of the offense, and while their domestic life was not always happy, the evidence discloses no very serious trouble. The defendant was a sheepherder by occupation, and his wife was employed in a Denver factory every day, with the exception of Saturday afternoons and Sundays.

The victim was a dwarf, 24 years of age, about four feet in height and weighing about 60 pounds. It appears from the testimony, that, in general, her mentality was that of a child of ten years, although she had completed the ninth grade work in the public schools. The evidence discloses that she was seldom away from home, where she was engaged in such work as one of her physical and mental powers might be expected to perform. The people's evidence is to the effect, that when the defendant and his victim were at home alone he frequently had sexual intercourse with her, over a considerable period of time, and that he continued this practice until she informed her mother, who immediately caused his arrest. At the trial the defendant denied any acts of intercourse.

1. There was no preliminary examination in this case, the information filed being supported by the affidavit of the defendant's wife. The defendant moved to quash the information because it was contended that under the provisions of section 7076, C. L. 1921, the information must be supported by the affidavit of a person "who is a competent witness to testify in the case," and under the

provisions of section 6563, C. L. 1921, the person making the affidavit, being the wife of the defendant, is incompetent. The motion to quash was denied and exception to the ruling saved. After the people had rested their case, the motion for a directed verdict, based on the grounds urged in support of the motion to quash, was also denied, and proper exception saved.

The affidavit supporting the information read, in part, as follows: "That the facts stated in the foregoing information, hereto attached, are true, and that the offense therein charged was committed of this affiant's own personal knowledge." Under our decisions, this is sufficient to make the information good, as against a motion to quash. *Ausmus v. People,* 47 Colo. 167, 176, 107 Pac. 204; *Bosco v. People,* 68 Colo. 256, 259, 188 Pac. 743.

We have also held that the person making the affidavit is a "competent witness to testify in the case," until the contrary appears, and that the affidavit supporting the information need not allege that the person making it is a competent witness. *Walt v. People,* 46 Colo. 136, 140, 104 Pac. 89.

The wife of the defendant was called to the witness stand, and interrogated with reference to her relationship to the defendant, and upon her answering that she was his wife, was immediately excused from the stand. The defendant contends that this was error, because he was compelled, in the presence of the jury, to object to his wife's testimony.

We have held that bigamy was such a crime committed by one against the other, as to make the wife a competent witness against her defendant husband, under the provisions of section 6563, C. L. 1921 (*Schell v. People,* 65 Colo. 116, 121, 173 Pac. 1141), and we determined that the wife was a competent witness against her husband charged with the crime of perjury, which was committed in making a false affidavit in a divorce action against her. *Dill v. People,* 19 Colo. 469, 475, 36 Pac. 229.

In the Dill case, supra, we said at pages 478 and 479: "That the making of the affidavit, if false, was a crime, is conceded. But it is contended by defendant's counsel that it was a crime against the state—a crime against society—a public crime, but not a crime against the wife.

"All crimes are crimes against the public; the first element of a crime as stated in our criminal code is, that it 'consists in a violation of a public law.' Gen. Stats., p. 232. But crimes directly affecting particular persons or individuals are uniformly considered crimes against such persons or individuals. For example: The murderer commits a crime against the person whose life he destroys; the thief commits a crime against the person whose property he steals; the libeler commits a crime against the person whose good name and fame he destroys or injures; and yet all these several classes of crimes are crimes against the public. * * *

"From a review of the decisions it appears that there is some conflict in respect to the question as to when a husband or wife may testify against the other, under statutes like ours. In Texas a late decision seems to limit the wife's right to testify against her husband to cases of violence against her person as at common law. On the other hand, the Iowa and Nebraska decisions under a statute like ours extend the right of the wife to testify against her husband in any criminal action or proceeding for any crime committed against her, and bigamy and adultery are held to be crimes against the lawful wife. * * *

"Since some private wrong or injury is included in every crime, it is evident that the word *crime* in that clause of the statute which permits the husband and wife to testify against the other in a 'criminal action or proceeding for a *crime* committed by one against the other,' means the private wrong or injury included in such public crime. The word must have such meaning, or the statute is meaningless. It follows that a wife is competent to testify against her husband in a criminal action

or proceeding whenever she is the individual particularly and directly injured or affected by the crime for which he is being prosecuted.''

In the Dill case, supra, the court had under consideration the similar Iowa, Nebraska and Texas statutes, and it then determined to follow the Iowa and Nebraska decisions. In the Schell case, supra, the court again decided to follow the decisions of the Iowa courts upon the question of perjury. In interpreting the Iowa statute, the courts of that jurisdiction have held that the statute has no application to the crime of rape, and therefore the wife in such a case may be a witness against her accused husband. *State v. Shultz,* 177 Iowa, 321, 327, 158 N. W. 539; *State v. Chambers,* 87 Iowa, 1, 3, 53 N. W. 1090.

In Nebraska a like rule prevails. *Owens v. State,* 32 Neb. 167, 174, 49 N. W. 226, as to incest; *Lord v. State,* 17 Neb. 526, 529, 23 N. W. 507, as to adultery; *Harris v. State,* 80 Neb. 195, 114 N. W. 168, as to rape.

The principles announced in the Dill and Schell cases, supra, are sound, and have remained the law in this state for many years. If bigamy, and, under certain circumstances, perjury, are such crimes committed by one spouse against the other, as to render the husband or wife competent to testify against the offending party, it follows logically and inevitably, that rape is also such a crime. The innocent spouse is not precluded by the statute from testifying against the accused spouse, who stands charged with this offense. The innocent spouse is a competent witness, with or without the consent of the accused spouse, and such evidence is not within the prohibition of the statute. This is particularly true in this case, where the crime was committed against the natural daughter of the wife, and therefore an outrage upon nature in its dearest and tenderest relations as well as a crime against humanity itself.

2. It is next contended that error was committed in permitting the victim to testify, because the informa-

tion alleged that she was "incapable through unsound mind of giving legal consent." This means, when used in the rape statute, that the victim does not have the mental capacity to understand and appreciate the nature of the act; the enormity of the offense committed against her; its immoral character, and the natural and probable consequences attendant upon this violation of the law of God and man. She may testify when it is found that she appreciates the nature and obligation of an oath and has sufficient mental capacity to observe and correctly describe the facts under investigation; this, notwithstanding her mental powers and resources are limited, and her mind is weak and feeble. The victim's incapacity to give legal consent does not necessarily carry with it the incapacity to truthfully and accurately thereafter relate the facts constituting the commission of the offense.

 In some states, having statutes similar to the one under consideration, this exact question has been determined adversely to the defendant's contention. *People v. Peery,* 26 Cal. App. 143, 146 Pac. 44; *Beard v. State* (Okl.), 256 Pac. 354; *Adams v. State,* 5 Okl. Cr. 347, 114 Pac. 347; *State v. Prokosch,* 152 Minn. 86, 88, 187 N. W. 971; *State v. Simes,* 12 Idaho, 310, 85 Pac. 914, 915, 9 Ann. Cas. 1216; *Hyde v. State,* 26 Okl. Cr. 69, 221 Pac. 787.

Whether or not the victim in this case possessed sufficient mental capacity to give her legal consent was a question of fact exclusively for the jury to determine. The victim was present in court and testified; the jury had the opportunity of seeing her, and were capable of judging as to her mentality, and determined that she did not have the mental capacity to give legal consent. There being competent evidence upon this question, the jury's determination is binding upon us.

 Some complaint is made as to the qualifications of the witnesses whose testimony is characterized as "expert testimony." Juries are permitted, without the

aid of expert testimony, to determine whether or not a person is sane. Lay witnesses are permitted in similar cases to testify, giving their opinions, under certain conditions, as to the sanity of persons, and, by analogy, the jury in this case might determine whether or not the victim was mentally capable of giving legal consent, with or without the testimony of expert witnesses.

3. Error is assigned because the court permitted the wife of the defendant to be called and sworn by the people as a witness, forcing the defendant, if he desired to prevent her testifying, to make his objection to her competency in the presence of the jury. We have determined that the wife was a competent witness to testify in this case, without her husband's consent, and over his objection.

4. The defendant contends that during the trial and while the victim was testifying, her answers were influenced by improper suggestions of those interested in the prosecution, and also, that the defendant was prejudiced by remarks made during the course of his attorney's argument. These alleged errors were first brought to the attention of the trial court in the motion for a new trial, and the record discloses that the judge, in denying the motion, stated that he was not aware of any misconduct during the course of the trial. The coaching of witnesses is reprehensible, and counsel should be permitted to make their arguments without interruption from parties concerned or spectators, but if these acts occur, it is the duty of counsel to immediately call them to the attention of the court, thereby giving the trial judge an opportunity of conducting the trial in a proper and orderly manner. These matters not having been observed by the trial judge during the course of the trial, and counsel having failed to call them to the attention of the court, it is now too late to complain.

According to the testimony of three police officers, the defendant admitted his illicit relations with his stepdaughter and there is other evidence that this same ad-

mission was made to his wife, although she was not permitted to so testify. The defendant, of course, denied intercourse, and also denied the testimony of these witnesses; however, the jury was convinced by the evidence of the defendant's guilt, and so found.

Offenses, such as the one under consideration, are committed in secret, and if we hold that the weak in mind and feeble in intellect are incompetent to testify as witnesses, simply because they are incapable of giving legal consent, we would, by our decision, rob these unfortunates of all the protection of our laws, and such instances of depravity and immorality as we have considered here could be carried on by the lowest of humanity without fear of punishment.

Judgment affirmed.