## No. 21479.

### Joe Jordan *v.* The People of the State of Colorado.
(419 P.2d 656)

Decided October 31, 1966.    Rehearing denied November 21, 1966.

WALTER L. GERASH, KENNETH A. SELBY, CARL FELDHAMER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT C. MILLER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

PLAINTIFF in error, Joe Jordan, was found guilty by a jury of taking indecent liberties with his step-daughter. He was sentenced to an indeterminate term of from one day to life in the State Penitentiary. He brings writ of error, seeking to reverse the judgment of the trial court. We will refer to the plaintiff in error as defendant, or by name, and to the defendant in error as the People.

The defendant enumerates several alleged errors which he contends require reversal. They are as follows:

1. That the defendant's confession was involuntary and that it was prejudicial error to admit it into evidence.

2. That the information was fatally defective in that it failed to charge a crime.

3. That the alleged victim was not a competent witness and should not have been allowed to testify.

4. That the defendant's wife, Donna Jordan, should not have been allowed to testify over the defendant's objection that her testimony was privileged.

5. That numerous instructions given by the trial court

to the jury were erroneous and highly prejudicial to the defendant.

6. That the sentence was erroneously imposed under the Sex Offender's Act, C.R.S. 1963, 39-19-1 et seq., rather than under the statute on indecent liberties, C.R.S. 1963, 40-2-32.

At the trial, the defendant's step-daughter testified concerning the acts committed upon her by the defendant, a practicing osteopathic physician. The victim's mother testified as to the complaint made by the girl. The court also admitted into evidence, on behalf of the People, a written statement made by the defendant that he had committed the various acts charged by the victim. The defendant himself did not testify. The evidence on his behalf consisted of character witnesses, statements made by the wife to witnesses that she was going to ruin the defendant for what he did, and testimony by a girl who worked in the defendant's office and also lived in the family home, that she did not see the commission of the acts charged although the victim testified that the girl was present in the doctor's office during some of these acts. She also testified that the victim was very fractious and often lied. The People attempted to impeach the testimony of this witness by showing that she and the defendant had left town together.

I.

The principal assignment of error relied upon is the defendant's claim that the trial court erroneously admitted the defendant's confession into evidence. The confession was admitted over repeated and timely objections that it was not voluntary. The confession was hand-written and in question and answer form. The questions were written by the interrogating officer and the answers were written by the defendant. An examination of all of the circumstances surrounding the obtaining of this confession convinces us that the trial court was correct in ruling that the confession was voluntary.

The testimony concerning the circumstances under which the confession was made was uncontradicted. It came from the interrogating officer and the defendant's wife. The defendant did not attempt to rebut this testimony by showing any contradictory evidence, nor did he take the stand either during the *in camera* proceeding held by the trial court to determine the voluntariness of the confession or in open court, after the confession had been introduced there. He offered no alternative version of the circumstances surrounding the making of the confession.

The record of the *in camera* hearing shows the following circumstances. The defendant was committed to the psychopathic ward of a hospital at Boulder, Colorado on December 27, 1963 under a hold and treat order because of an apparent suicide attempt on his part. He was questioned briefly on January 4, 1964 by officers from the Adams County Sheriff's office. On his release from the hospital on January 6, 1964, he was arrested, taken before a Justice of the Peace, charged with incest and jailed in Adams County. He was then questioned briefly on the morning of January 7, 1964. He was advised of his rights at this time. Late in the afternoon of that day he was again questioned after being advised of his rights. While he was being questioned in the late afternoon, the defendant's wife, Donna Jordan, came to the office where the questioning was taking place. Mrs. Jordan came of her own volition and not at the request of the police. The defendant asked to be alone with his wife and this request was granted. They talked together for about 15 minutes. Thereafter, the officer returned and the defendant's wife made the following statement:

"You have told me the truth and I would like to see you tell it to these people and not make * * * out to be a liar."

Thereupon, the defendant indicated he wished to talk and made the statement now objected to.

The defendant had retained counsel prior to the eve-

ning of January 7, 1964, and had conferred with that counsel. His counsel was not present at the time the confession was made. The interrogating officer testified that at that time he advised defendant of his rights and he also said the following to the defendant: "Well, I also assume that Mr. Selby [defendant's counsel] has told you you should not make a statement." To this the defendant replied: "Yes; but I will do what I please. I want to get right with God and myself . . . I will just do what I want to in this case . . . I'm going to make a statement and give it to you. I don't want my little girl to have to go through court." The defendant then proceeded to give the confession to the interrogating officer.

■ We are asked to hold as a matter of law, that the absence of counsel was in itself a denial of the defendant's constitutional right to the assistance of counsel under *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. However, *Escobedo* and *Miranda* are not applicable to this case since it was tried before either of them had been announced. In *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the United States Supreme Court held that *Escobedo* and *Miranda* do not apply retroactively, but apply only to cases in which trial began after the date of their announcement. See also *Ruark v. People,* 158 Colo. 110, 405 P.2d 751.

■ It is clear from *Davis v. State of North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895, that trials not governed by *Escobedo* and *Miranda,* however, are to continue to be governed by the traditional "voluntariness" tests. Since each case dealing with the voluntariness of confessions must be decided on its own facts, we must look to the "totality of the circumstances" to see if the confession here was voluntary or involuntary.

■ As early as 1941, the United States Supreme Court indicated that due process requires exclusion of involuntary confessions, not because they may not be truthful,

but because of the fundamental unfairness in the use of evidence so obtained. *Romers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760; *Lisenba v. California,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166.

Here the defendant was not subjected to prolonged and relentless interrogation by relays of officers as in *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed. 2d 1265, or *Watts v. Indiana,* 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801. The periods of interrogation were not overly long nor were offensive tactics used here. While the trial court recognized that the defendant was emotionally distraught, the court also found as a matter of fact that the defendant was capable of understanding what he was doing. The defendant stated that he wanted to give this confession. And the confession itself shows that he was so sufficiently coherent in his own mind that when asked for an explanation of his conduct he wrote as the reason for his actions: "compulsive, uncontrollable urges as result of childhood pathological-psychological experiences induced by relatives." His answers were coherent and not inconsistent. They were not apparently given in coached wording but were in the defendant's own words.

We are not unaware of the Sixth Amendment right-to-counsel implications raised by *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, a case which preceded *Escobedo* by approximately one month. But even if the new exclusionary rule announced in that case were to operate retrospectively, (and we do not think it does) the situation here is vastly different from the fact situation there. Here with full knowledge of his rights, and having been told by his lawyer not to speak, and having been reminded of that admonition of counsel by the police, the defendant nevertheless explicitly chose to proceed to make his statement to the police officer with full knowledge that he was speaking to the police. This is in direct contrast to the situation in *Massiah,* where it was apparent that the police, after

*indictment and arraignment,* used trickery to obtain a confession from the defendant in the absence of his lawyer.

█ In view of the uncontradicted testimony of the witnesses as to the circumstances surrounding the taking of this confession, we are convinced that the trial court was correct in ruling that the confession was voluntary. *Crooker v. California,* 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed. 2d 1448. The confession was not involuntary as a matter of law, and the record amply supports the trial court's conclusion that the confession was voluntary as a matter of fact.

II.

█ In the second of the assignments of error mentioned above, the defendant claims that an allegation of "assault" is necessary in any information filed under C.R.S. 1963, 40-2-32. We have held that this statute enumerates four separate offenses:

"* * * The four offenses enumerated in the statute are: (1) An assault coupled with taking indecent and improper liberties; (2) 'entice, allure or persuade any such child into any room * * * for the purpose of taking such immodest and indecent liberties'; (3) take 'such liberties with the person of such child at any place'; (4) attempt to take 'such liberties with the person of such child at any place.'" *Kidder v. People,* 115 Colo. 72, 77, 169 P.2d 181, 183.

. The information filed in this case clearly charges the third of the four enumerated offenses. We have held that the element of assault must be alleged and proved only with respect to the *first* of the enumerated offenses and not with regard to the second, third and fourth offenses. *Carter v. People,* 161 Colo. 10, 419 P.2d 654; *Cross v. People,* 122 Colo. 469, 223 P.2d 202. The information was not defective and defendant's motion for a directed verdict of dismissal was properly denied.

III.

· █ In the third assignment of error, the defendant

alleges that the victim was not a competent witness. She was seven years of age at the time of the alleged offense and eight years of age at the time of trial. The defendant claims that admitting her testimony was error. The record shows that the trial judge conducted a lengthy voir dire of the witness, allowed both counsel to question the witness, listened to arguments by both sides and finally admitted the testimony with appropriate cautionary instructions to the jury. The witness indicated that she would refuse to tell a lie even if her mother asked her to do so, and that she feared that if she told a lie she would not go to heaven. The record shows lengthy cross examinations of the witness, both during the initial voir dire and during her testimony in open court. Her testimony was clear and not obviously coached or rehearsed. In such circumstances, we cannot find that the trial court abused its discretion in finding that the witness was competent. *Hood v. People,* 130 Colo. 531, 277 P.2d 223; *Wesner v. People,* 126 Colo. 400, 250 P.2d 124; *Pillod v. People,* 119 Colo. 116, 200 P.2d 919; *Brasher v. People,* 81 Colo. 113, 253 Pac. 827; *City of Victor v. Smilanich,* 54 Colo. 479, 131 Pac. 392.

### IV.

In his fourth assignment of error, the defendant claims that his wife, Donna Jordan, was allowed to testify over the defendant's objection that the testimony was privileged under C.R.S. 1963, 154-1-7 (1) and (2). That statute expressly excepts from the privilege any "criminal action or proceeding for a crime committed by one against the other." The defendant claims that this exception does not apply here because a crime against the child is not a crime against the mother. With this contention we do not agree. We have held the spouse to be a competent witness in prosecutions for (1) Murder of a step-child, *O'Loughlin v. People,* 90 Colo. 368, 10 P.2d 543; and (2) Rape of a step-child, *Wilkinson v. People,* 86 Colo. 406, 282 Pac. 257. A prosecution for taking indecent liberties is no less a crime against the

wife than was committed in the *O'Loughlin* and *Wilkinson* cases, and we hold that Donna Jordan was a competent witness to testify against her husband.

V.

■■■ Defendant also alleges as error the giving of instructions numbered 1, 2, 3, 4, 5, 6, 9, 12, 17 and 18. We note that defendant made no objection at trial to instructions 5, 12 and 17, and normally we would not consider the objections when made here for the first time. *Sarno v. People,* 74 Colo. 528, 223 Pac. 41. Even so, none of the instructions to which defendant objects constitutes error.

■■■ Instruction No. 1 is a stock instruction defining the crime in substantially the same words as the statute. Instructions defining crimes in this way have repeatedly been held proper, e.g., *Block v. People,* 125 Colo. 36, 240 P.2d 512; *Stoltz v. People,* 59 Colo. 342, 148 Pac. 865.

■■■ Instruction No. 2 defines "indecent liberties" in terms of the common sense of the community. Much of the wording of Instruction No. 2 is substantially the same as the wording of the opinion in *Dekelt v. People,* 44 Colo. 525, 529, 99 Pac. 330, 332, and that case clearly supports the language used in this instruction.

■■■ Instruction No. 3 is an admonishment to the jury that the charge itself is not evidence and must not be considered by them to be evidence. This is a correct statement of the law, and the only effect it could have would be favorable to the defendant. In any event, defense counsel himself raised this subject when he repeatedly asked prospective jurors on voir dire if they would be influenced solely by the bringing of the charge, to which the answers were uniformly "no." We are unable to see in what way Instruction No. 3 was erroneous or prejudicial.

Instruction No. 4 is a stock instruction on the presumption of innocence, and raises only inferences which are favorable to the defendant.

The defendant objects to Instruction No. 5 on the

ground that it requires the People to prove each and every "material allegation" of the information and the allegation of "assault" was not in the information. We have already disposed of this alleged error in holding that the information correctly alleged a crime under the *Kidder* and *Cross* cases.

In Instruction No. 6, the defendant objects to the use of the word "conviction" rather than the use of a more innocuous synonym such as "belief" or "satisfaction." Counsel did not request the use of a different word when objecting to this instruction, and, in the context of the words used, requiring the jury to have "an abiding conviction of the truth of the charge" before it could find the defendant guilty can hardly be said to be requiring the jury to convict the defendant.

Instruction No. 9 cautions the jury that the charge of indecent liberties is easily made and difficult to *disprove,* and that therefore the jury should examine the evidence with critical care before arriving at a verdict. Defendant claims that this requires the defendant to *disprove* the charge. We do not feel that any person, layman or lawyer, could reasonably draw such an inference. The only reasonable inference to be drawn is favorable to the defendant, *Bowen v. People,* 87 Colo. 38, 284 Pac. 779.

In objecting, in his brief, to Instruction No. 12, defendant has evidently confused that instruction with Instruction No. 14. No. 12 cautions the jury that the testimony of children of tender years is subject to some doubts and must be examined carefully. This can only be favorable to the defendant. In any case, Instruction No. 12 was accepted by both sides at trial. Instruction No. 14, to which defendant evidently alludes in his brief, cautions the jury that if they find that the defendant's actions were consistent with medical treatment practices and therefore consistent with the defendant's relation to his step-daughter as doctor to patient, then the jury should find the defendant not guilty. This was con-

sistent with the defendant's theory of the case at the trial, and he did not object to the instruction at the trial. In fact, the only objection to this instruction at trial was made by the *People*. We perceive no error here.

Instruction No. 17 instructs the jury that evidence of other transactions which was heard at trial was admissible only for the purpose of proving plan or design and that the defendant could not be tried or convicted of any offense not charged in the information. This type of language limiting the purpose for which such evidence can be received has already been approved by this Court in *Hood v. People, supra.*

Instruction No. 18 instructs the jury that the exact date as alleged in the information need not be proved, and that it is sufficient if the evidence proved that the act charged was actually committed within three years prior to the date alleged in the information. This was not erroneous. *Albritton v. People,* 157 Colo. 518, 403 P.2d 772; *Koontz v. People,* 82 Colo. 589, 263 Pac. 19; *Lavcock v. People,* 66 Colo. 441, 182 Pac. 880; *Dill v. People,* 19 Colo. 469, 36 Pac. 229.

Defendant also objected to Instruction No. 22 at trial, and his brief is not clear as to whether he continues to urge this objection. Instruction No. 22 was a stock instruction cautioning the jury to disregard the statements, objections and comments of court and counsel and the evidentiary rulings of the court. It also admonished the jury that the instructions must be read as a whole. This was not error. *Davis v. People,* 112 Colo. 452, 150 P.2d 67.

The giving of these instructions in no way prejudiced the defendant. We find no error in any of the individual instructions, or in the instructions considered as a whole. *Martz v. People,* 114 Colo. 278, 162 P.2d 408.

VI.

The defendant's last assignment of error relates to the action of the trial court in sentencing the defendant under the Sex Offender's Act rather than under the

statute defining the crime of indecent liberties. The gravamen of the complaint made is that the trial court failed to make a specific finding that the defendant would constitute a threat to society at large. We think that such a finding, if necessary, is implicit in the sentence. The record reflects that the trial court considered the sentence carefully, and fully complied with the statutory requirements of C.R.S. 1963, 39-19-2 before sentencing. We find no abuse of discretion in the sentencing procedure. *Ray v. People*, 160 Colo. 173, 415 P.2d 328; *Specht v. People*, 156 Colo. 12, 396 P.2d 838; *Trueblood v. Tinsley*, 148 Colo. 503, 366 P.2d 655.

The judgment is affirmed.