The PEOPLE of the State of
Colorado, Petitioner,

v.

The DISTRICT COURT, In and For SUM-
MIT COUNTY, State of Colorado, the
Honorable W. Terry Ruckriegle, Judge
Therein, Respondents.

No. 89SA454.

Supreme Court of Colorado,
En Banc.

May 14, 1990.

Peter F. Michaelson, Dist. Atty., Breck-
enridge, for petitioner.

Law Office of Rick J. Brown, Rick J.
Brown, Breckenridge, for respondents.

Justice VOLLACK delivered the
Opinion of the Court.

The People petitioned for a rule to show
cause pursuant to C.A.R. 21 in *People v.
Davis*, No. 89CR122 (Summit County Dis-
trict Court). The defendant Sandra Davis
has been charged with one count of child
abuse, § 18–6–401, 8B C.R.S. (1986 & Supp.
1989). At a pre-trial hearing the Summit
County District Court (the district court)
ruled that C.D., the four-year-old victim,
was not competent to testify as a witness
under subsection 13–90–106(1)(b), 6A C.R.S.
(1987 & Supp.1989), because he does not
understand the difference between telling
the truth and telling a lie, and he is not
capable of taking an oath to tell the truth.
We issued a rule to show cause and we
now make the rule absolute.

## I.

On November 6, 1989, the district court held a pretrial hearing to determine C.D.'s competency to testify at trial. During the hearing the district court, the district attorney, and counsel for the defendant questioned C.D. in the court's chambers.

At the hearing, the district court asked C.D. where he used to go to day care and C.D. answered, "Sandy's. She's a bad lady." The following exchange then took place:

THE COURT: What are we here to talk about, [C.D.]?

[C.D.]: Sandy.

THE COURT: And why are we going to talk about Sandy?

[C.D.]: She went like this right here (Indicating his arm).

THE COURT: Tell me what she did. You're grabbing your arm. What did she do?

[C.D.]: She went like this, twisted my arm.

THE COURT: Where did she do that? Where did that happen?

[C.D.]: Right here (Indicating).

THE COURT: Okay, it happened on your arm you're saying....

([C.D.] nods his head.)

. . . .

THE COURT: What happened when Sandy grabbed your arm?

[C.D.]: She went like this (Indicating) and put by my hands [sic].

THE COURT: Can you tell me what motions you're making?

[C.D.]: She twisted my arms and put my hands behind my back.

THE COURT: What happened then?

[C.D.]: That was all.

The court asked C.D. if he knew what it meant to tell the truth and C.D. shrugged his shoulders. The court asked C.D. if he knew what it meant to tell a lie and he shook his head.[1] After these exchanges the court brought C.D.'s mother into cham-

bers in an attempt to make C.D. feel more comfortable.

The court then asked C.D. a series of questions designed to determine whether C.D. could tell the difference between telling the truth and telling a lie. C.D.'s statements indicated he does not know the difference between telling the truth and telling a lie. When the court again asked C.D. if he knew what it meant to tell the truth C.D. nodded his head, but C.D. could not describe in his own words what it means to tell the truth. The court asked C.D. whether, if given the choice, he would tell the truth or tell a lie, if he knew the difference between telling the truth and telling a lie, and if he knew what it means to be honest. C.D. shrugged his shoulders in response to each question.

When the court asked C.D. why he was saying that Sandy twisted his arm, C.D. answered, "Because." When the court asked, "Because why?", C.D. answered: "She twisted my arm." When the court asked if that was the truth or a lie, C.D. shook his head. The court asked, "Do you know?", and C.D. nodded his head. The court asked, "Which is it?", and C.D. shrugged his shoulders. The court asked C.D. if he knew what it meant to take an oath to tell the truth and C.D. shook his head. The court asked C.D. if it was right or wrong to tell the truth and C.D. said, "Right."

The court then asked if it was right or wrong to tell a lie and C.D. said, "Right."

The court then asked: "If we go into court and I ask you to promise to tell the truth, can you do that?" C.D. nodded his head. The court asked: "If we go into Court and you promise to tell the truth—if we go into Court and you are asked questions, will you tell the truth?" C.D. nodded his head.

The district attorney asked C.D. if he had ever told a lie. C.D. shook his head. The district attorney then stated, "You don't know what happens if you tell a lie then, do you?", and C.D. shook his head. The dis-

---

1. The record does not explicitly state that C.D. shook his head as if to indicate "no," or that he

nodded his head as if to indicate "yes."

trict attorney asked C.D. if he was telling the truth about Sandy, and C.D. nodded his head. The district attorney asked C.D. if he would tell the truth if the judge asked him to promise to tell the truth, and C.D. nodded his head.

Defense counsel asked C.D. if it would be a lie or the truth to say that someone's shirt was red when it was really blue, and C.D. said, "The truth."

The court asked C.D. a few final questions. C.D. nodded his head when the court asked him if he knew the difference between right and wrong, but C.D. could not explain the difference.

The court ruled that C.D. was not qualified to testify as a witness under section 13–90–106. The court stated that:

> There are four general elements of competency for a witness to testify. Those are particularly as they relate to children. If the child has a capacity to observe, if the child has a capacity to remember, if the child has a capacity to relate what has happened, and the child recognizes a duty to tell the truth....

> In this case, [C.D.] was able to describe to the Court in language appropriate for a child his age the events or facts with respect to which he is to be examined. The Court perceived him to have the capacity to observe things accurately, the Court perceived him to have the capacity to remember what had happened with regard to the events or facts alleged in this case. The Court also perceived him to have the capacity to relate those events. In this case, although [C.D.] indicated that he knew the difference between telling the truth and telling a lie, when the Court inquired, he could not distinguish between the two.... It appears to the Court that although [C.D.] indicated he would tell the truth, he does not know what it means to take an oath, that he does not know what it means to not tell the truth or to tell a lie, and does not appreciate the consequences of not telling the truth. The oath serves a function and that function is to require

witnesses to tell the truth and to remind them of the consequences and thereby take an oath to tell the truth.

> Although it appears that pursuant to 13–90–106(1)(b)(II), that within the parameters set forth by the legislature, [C.D.] would be competent. Those parameters do not include the recognition or the ability to tell the truth and the ability to take an oath, and the Court believes that is a paramount requirement of testifying, whether it be a child or an adult.

> Therefore, the Court finds that [C.D.] is not competent to testify.

## II.

Section 13–90–106 states that:

> (1) The following persons shall not be witnesses:

> . . . .

> (b)(I) Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined or of relating them truly.

> (II) This proscription does not apply to a child under ten years of age, in any civil or criminal proceeding for child abuse, sexual abuse, sexual assault, or incest, when the child is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined.[2]

The question of whether, under subsection 13–90–106(1)(b), a child under ten years of age is competent to testify in a child abuse proceeding is addressed to the sound discretion of the trial court. *Lancaster v. People*, 200 Colo. 448, 454, 615 P.2d 720, 724 (1980); *People v. Estorga*, 200 Colo. 78, 83, 612 P.2d 520, 524 (1980); *Marn v. People*, 175 Colo. 242, 245, 486 P.2d 424, 426 (1971).

Prior to the legislature's adoption of subsection 13–90–106(1)(b)(II), Colorado courts assessing the competency of child witnesses considered their ability to understand their obligation to testify truthfully. *See,*

---

2. Effective April 12, 1989, the legislature amended § 13–90–106(1)(b)(II) by including child abuse as one of the proceedings to which the subsection applies. 1989 Colo.Sess.Laws 862.

*e.g., Lancaster,* 200 Colo. at 454, 615 P.2d at 724. The legislature modified the law of evidence by adopting subsection 13–90–106(1)(b)(II) in 1983. 1983 Colo.Sess.Laws 635. In this case we address the issue of whether, under subsection 13–90–106(1)(b)(II), a child must understand his or her obligation to tell the truth in order to be judged competent to testify.

Respondent relies upon *People v. District Court of El Paso County,* 776 P.2d 1083, 1086 (Colo.1989),[3] to support the argument that a child who does not understand the difference between telling the truth and telling a lie is not competent under subsection 13–90–106(1)(b)(II). In *People v. District Court,* we addressed whether the trial court erred in ruling that a child witness who was not competent to testify under subsection 13–90–106(1)(b)(II) was nonetheless available to testify under subsection 13–25–129(1)(b)(II), 6A C.R.S. (1987). *Id.* at 1087. Subsection 13–25–129(1)(b)(II) authorizes trial courts to admit the hearsay statements of a child sexual assault victim if the child is unavailable to testify. Respondent relies on the fact that in *People v. District Court,* 776 P.2d at 1086, the trial court found the child-victim not competent to testify because "she was unresponsive to questions in open court from both the prosecution and [the] court and could not state what it meant to tell the truth or to lie."

Respondent's reliance on the trial court's finding that the victim could not state what it meant to tell the truth or to lie is misplaced. In *People v. District Court,* 776 P.2d at 1087, we stated that

> [p]ursuant to section 13–90–106(1)(b)(II) ... a child under ten years of age is not competent to testify in a sexual assault proceeding if he or she is not able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined.

We stated, in reference to subsection 13–90–106(1)(b)(II), that "[a] competency hear-

ing determines only whether a child can accurately recollect and narrate at trial the events of abuse." Thus, our statement in *District Court* that "[i]t is clear from the record that the trial court properly concluded that [the victim] was not competent to testify" was based on the child's failure to respond to the questions posed to her at the competency hearing, not her inability to state what it meant to tell the truth or to lie. *Id.* at 1087.

■ We hold that a child need not be able to understand what it means to take an oath to tell the truth and need not be able to explain what it means to tell the truth in order to be judged competent to testify under subsection 13–90–106(1)(b)(II).

C.D. was competent to testify under subsection 13–90–106(1)(b)(II) because he was able to identify the defendant, and could describe her assault on him in sufficient detail. The plain language of subsection 13–90–106(1)(b)(II) provides that in any civil or criminal proceeding for child abuse, children under ten years of age are competent to testify if they are able to describe or relate in language appropriate for a child of their age the events or facts respecting which the child is examined. *See District Court,* 776 P.2d at 1087.

Our interpretation of subsection 13–90–106(1)(b)(II) is supported by the fact that it operates as an exception to subsection 13–90–106(1)(b)(I). Therefore, the requirement in subsection 13–90–106(1)(b)(I) that child witnesses be able to relate the facts truthfully does not apply to cases in which subsection 13–90–106(1)(b)(II) applies. The legislature adopted subsection 13–90–106(1)(b)(II) in order to allow juries to assess the weight and credibility of the testimony of victims of child abuse. *See* Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,* 98 Harv.L.Rev. 806, 819 n. 89 (1985) (noting that subsection 13–90–106(1)(b)(II) abolished the presumption that child victims of abuse are incompetent to testify); *see also id.* at 819 n. 91 (summar-

---

**3.** *Oldsen v. People,* 732 P.2d 1132, 1133 n. 1 (Colo.1986), and *W.C.L. v. People,* 685 P.2d 176, 178 n. 1 (Colo.1984), upon which the respondent

also relies, are inapplicable, as the trials in those cases took place before the legislature enacted § 13–90–106(1)(b)(II).

izing the opinions of expert authorities that children's reports of sexual abuse are extremely reliable). The legislature's adoption of subsection 13–90–106(1)(b)(II) represents a public policy choice within its constitutional power. *People v. McKenna,* 196 Colo. 367, 371, 585 P.2d 275, 278 (1978).[4] Therefore, where subsection 13–90–106(1)(b)(II) applies, the sole requirement imposed on the prospective child witness is that he or she be "able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined."

The record in this case demonstrates that C.D. was competent to testify under subsection 13–90–106(1)(b)(II). The district court found that:

> [C.D.] was able to describe to the Court in language appropriate for a child of his age the events or facts with respect to which he is to be examined. The Court perceived him to have the capacity to observe things accurately. The Court perceived him to have the capacity to remember what had happened with regard to the events or facts alleged in this case. The Court also perceived him to have the capacity to relate those events.

The district court also stated: "[I]t appears that pursuant to 13–90–106(1)(b)(II), that within the parameters set forth by the legislature, [C.D.] would be competent." The district court should have held that, based on its findings, C.D. was competent to testify under subsection 13–90–106(1)(b)(II). *People v. District Court,* 776 P.2d at 1087. The district court abused its discretion by judging C.D.'s competence according to two requirements not contained in subsection 13–90–106(1)(b)(II): that the prospective witness understand the difference between telling the truth and lying, and that the prospective witness understand what it means to take an oath to tell the truth.

The rule to show cause is made absolute.

QUINN, C.J., dissents, and ERICKSON and MULLARKEY, JJ., join in the dissent.

KIRSHBAUM, J., concurs.

Chief Justice QUINN dissenting:

I dissent from the majority's holding that, pursuant to section 13–90–106(1)(B)(II), 6A C.R.S. (1987 & 1989 Supp.), a child unable to understand the difference between telling the truth and lying is nonetheless competent to testify as a witness in a judicial proceeding.

### I.

It has been a long-standing requirement of the common law that a witness affirm in some manner the duty to speak truthfully before testifying as a witness. The purpose of this requirement is to enhance the truth-seeking process by securing "a hold on the conscience of the witness." *See* VI *J. Wigmore on Evidence* § 1816 at 383 (Chadbourn rev. 1976) (quoting W. Best, *Evidence,* §§ 58, 161 (1849)). The common law requirement, in other words, promotes the cause of truth by impressing on the witness a duty to speak only the truth. *See United States v. Turner,* 558 F.2d 46, 50 (2nd Cir.1977); *United States v. Looper,* 419 F.2d 1405, 1407 (4th Cir.1969); D. Louisell and C. Mueller, *Federal Evidence,* § 265 at 48 (1979).

Implicit in the requirement of an oath or affirmation is the witness' moral understanding of the obligation to tell the truth. When the witness lacks the capacity to understand the obligation of truth-telling, the witness' testimony is no more reliable than an unsworn statement of a witness. For a court or jury to rely on such unsworn "testimony" in resolving a case or contro-

---

**4.** CRE 603 does not invalidate § 13–90–106(1)(b)(II)'s elimination of the common law requirement that witnesses affirm their duty to speak truthfully because § 13–90–106(1)(b)(II) represents a " 'validly enacted legislative [ ...] policy involving matters other than the orderly dispatch of business.' " *McKenna,* 196 Colo. at 371, 585 P.2d at 277 (quoting Joiner & Miller, *Rules of Practice and Procedure: A Study of Judicial Rulemaking,* 55 Mich.L.Rev. 623 (1957)) (ellipsis ours). *See also Montoya v. People,* 740 P.2d 992, 996 (Colo.1987) ("in the event of a conflict between a statute concerning a matter of substantive import and a rule of evidence, the statute will prevail over the rule").

versy is irreconcilable with the judicial process as we know it to be.

## II.

Section 13–90–106(1)(b) states:

(1) The following persons shall not be witnesses:

> \* \* \* \* \* \*

> (b)(I) Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined or of relating them truly.

> (II) This proscription does not apply to a child under ten years of age, in any civil or criminal proceeding for child abuse, sexual abuse, sexual assault, or incest, when the child is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined.

The majority's construction of subsection (1)(b)(II) of this statute permits a child witness to testify in court notwithstanding the fact that the child lacks any moral sense of the obligation of truth-telling inherent in the requirement of an oath and, in that respect, jeopardizes the integrity of the factfinding process of a judicial proceeding. In contrast to the majority, I would construe subsection (1)(b)(II) to authorize the receipt of the sworn testimony of a child-witness, even though the child is unable to describe the events or facts about which the child is examined in language ordinarily used by adults, as long as the child is capable of understanding the obligation to tell the truth and "is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." This construction would give full effect to both subsection (1)(b)(I) and subsection (1)(b)(II) of the statute.

I acknowledge that subsection 13–90–106(1)(b)(II) expresses an important public policy favoring the admissibility of child-witness' testimony in civil or criminal proceedings involving child abuse, sexual abuse, sexual assault, or incest, and thus is within the proper domain of both the legislative and judicial branches of government. *See, e.g., People v. Bobian,* 626 P.2d 1132 (Colo.1981); *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978). The mutual interest of the legislature and the judiciary in child-witness testimony in these cases furnishes an even more compelling reason to construe subsection (1)(b)(II) in a manner that harmonizes its provisions with Rule 603 of the Colorado Rules of Evidence. Rule 603 was adopted in 1980 pursuant to this court's constitutional rulemaking authority, Colo. Const. art. VI, § 21, and states as follows:

> Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so.

The harmonious construction of both the statute and the rule would permit a child-witness to testify in a judicial proceeding as long as the child is able to understand the difference between telling the truth and lying and the child can relate the events or facts under consideration in language appropriate for a child of that age.

## III.

The determination of a child's competency to testify by reason of a child's understanding of the obligation to tell the truth is a matter within the sound discretion of the trial court. *E.g., Marn v. People,* 175 Colo. 242, 486 P.2d 424 (1971); *Jordan v. People,* 161 Colo. 54, 419 P.2d 656 (1966), *cert. denied,* 386 U.S. 992, 87 S.Ct. 1308, 18 L.Ed.2d 338 (1967); *Victor v. Smilanich,* 54 Colo. 479, 131 P. 392 (1913). The trial court's resolution of this issue should not be disturbed unless the record clearly demonstrates that the trial court abused its discretion in determining the child's competency to testify. *Marn,* 175 Colo. 242, 486 P.2d 424; *Victor,* 54 Colo. 479, 131 P. 392. In this case the trial court determined, after extensively questioning the four-year old child, that the child could not speak truthfully because he did not know the difference between the truth and a lie. In light of the child's responses to the court's

questioning, I am satisfied that the trial court properly exercised its discretion in determining that the child was not competent to testify as a witness.

I would discharge the rule to show cause.

I am authorized to say that Justice ERICKSON and Justice MULLARKEY join in this dissent.

Justice KIRSHBAUM concurring.

I conclude that in section 13–90–106(1)(b)(II), 6A C.R.S. (1978 & 1989 Supp.), the General Assembly has determined that children nine years of age and younger who cannot or do not understand the difference between telling the truth and lying are not therefore disqualified as witnesses in certain cases. Although this construction raises other legal questions, I believe the conclusion is compelled by the plain language of the statute. I therefore concur in the opinion of the court.