**Willie DUNTON, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 94SC239.**

Supreme Court of Colorado,
En Banc.

June 26, 1995.

Rehearing Denied July 31, 1995.

---

David F. Vela, Colorado State Public Defender, and Martin Gerra, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., and Clement P. Engle, Senior Asst. Atty. Gen., Crim. Enforcement Section, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

Willie Dunton, the defendant, appeals a judgment of conviction entered upon a jury verdict finding him guilty of first degree sexual assault. The court of appeals af-firmed the trial court in *People v. Dunton,* 881 P.2d 390 (Colo.App.1994). We affirm the court of appeals.

## I.

Dunton met the fifteen-year old female victim at a swimming pool in an apartment complex where the victim's aunt lived. On the following day, the victim was babysitting her younger cousin when she encountered Dunton in an apartment doorway. According to the victim, Dunton grabbed her, pulled her into the apartment, locked the door, and had sexual intercourse with her, while physically restraining her by holding her hands over her head. The victim testified that she was crying during the assault and told the defendant that she did not want to have intercourse with him. Following the assault, the victim returned to her aunt's apartment and, shortly thereafter, reported the incident.

At the time of arrest, Dunton stated to the investigating officers that the victim had said "no" prior to the assault but that her body language indicated that she wished to have intercourse with him. Dunton gave similar testimony on his own behalf at trial. He also asserted that the victim willingly came into the apartment and that he neither locked the door nor forcefully detained her in any way.

Dunton was found guilty by a jury of one count of first-degree sexual assault, a class 3 felony, in violation of section 18–3–402(1)(a), 8B C.R.S. (1986). He was sentenced to the Department of Corrections for six years as a result of the conviction. Dunton appeals his conviction on grounds that the trial court should have instructed the jury that he must have been aware of the victim's nonconsent and that the court improperly limited the scope of his closing argument.[1] We disagree and affirm the court of appeals.

## II.

■ Dunton first argues that the trial court should have given the jury a special instruction requiring the prosecution to show his awareness of the victim's nonconsent in

---

1. We granted certiorari on the following issue: Whether the court of appeals erred in holding that a defendant's awareness of the victim's nonconsent is not an element of first-degree sexual assault under § 18–3–402(1)(a), 8B C.R.S. (1986)?

order to prove first degree sexual assault. We reject his argument.

▮ In construing a statute, "we seek to determine the intent of the legislature as expressed in the language it selected." *Triad Painting Co. v. Blair*, 812 P.2d 638, 644 (Colo.1991). Where the language of the statute is clear and unambiguous, the statute should be applied as written. *Griffin v. S.W. Devanney & Co., Inc.*, 775 P.2d 555, 559 (Colo.1989).

▮ The first degree sexual assault statute is clear and unambiguous. Section 18–3–402(1) contains several alternative definitions of first degree sexual assault. It states:

Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits a sexual assault in the first degree if:

(a) The actor causes submission of the victim through the actual application of physical force or physical violence; or

(b) The actor causes submission of the victim by threat of imminent death, serious bodily injury, extreme pain, or kidnapping, to be inflicted on anyone, and the victim believes that the actor has the present ability to execute these threats; or

(c) The actor causes submission of the victim by threatening to retaliate in the future against the victim, or any other person, and the victim reasonably believes the actor will execute this threat. As used in this paragraph (c), "to retaliate" includes threats of kidnapping, death, serious bodily injury, or extreme pain; or

(d) The actor has substantially impaired the victim's power to appraise or control the victim's conduct by employing, without the victim's consent, any drug, intoxicant, or other means for the purpose of causing submission; or

(e) The victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented.

§ 18–3–402(1). With the exception of subpart (e), the first degree sexual assault statute prohibits conduct which by its very nature negates the existence of the victim's consent. *People v. Smith*, 638 P.2d 1, 4 (Colo.1981). The statute equates the victim's nonconsent with proof that the defendant has caused the victim's submission by force, by threat either of great harm or of retaliation, or by deception (*i.e.*, surreptitiously drugging the victim). These acts of the defendant cause the victim to be unable to consent. *See Chambers v. People*, 682 P.2d 1173, 1178 (Colo.1984) (the offense of first degree sexual assault requires that the actor have an awareness of his conduct and of the circumstance of the nonconsent of his victim).[2] Thus, except for subpart (e), an independent showing of the defendant's awareness of nonconsent by the victim is unnecessary under the terms of the statute.[3]

The trial court's instruction was sufficient under the statute. The trial court instructed the jury as follows:

The elements of Sexual Assault in the First Degree are:

(1) That the Defendant,

---

**2.** The court of appeals stated that our prior decisions in *Smith* and *Chambers* appeared to be in conflict. *Dunton*, 881 P.2d at 392. In *Chambers*, we required that, under the first degree sexual assault statute, the prosecution must prove that the actor was aware of the *circumstance* of the victim's nonconsent. *Chambers*, 682 P.2d at 1179. In footnote 7 of our decision in *Smith*, we commented that:

the actor need not know that the victim in fact submits nonconsensually … the actor must be aware that his or her conduct is sufficient in character and degree to be likely to cause nonconsensual submission.

638 P.2d at 5 fn. 7. There is no conflict between these two cases because *Chambers* simply requires the actor's awareness of engaging in certain prohibited acts which the statute equates to nonconsent. As *Smith* made clear, the actor need not be aware of the victim's actual nonconsent.

**3.** Subpart (e), pertaining to a physically helpless victim requires no proof of force, threat, or deception by the actor but does require the actor to be aware of the victim's physical helplessness and lack of consent. Because no affirmative acts are necessary to cause submission of a physically helpless victim, subpart (e) requires proof of the victim's nonconsent. Subpart (e) is consistent with the scheme of the remainder of section 18–3–402(1) in equating certain acts by the defendant with nonconsent.

(2) in the City and County of Denver, State of Colorado, on or about June 25, 1991,

(3) knowingly,

(4) inflicted sexual penetration on a person, and

(5) caused submission of that person,

(6) through the actual application of physical force or physical violence.

After considering all the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you should find the Defendant Guilty of Sexual Assault In The First Degree.

The trial court's instruction mirrors the language of subpart (a) of the first degree sexual assault provision. Furthermore, this instruction appropriately defines the "circumstance of the victim's nonconsent" underlying first degree sexual assault. *Chambers,* 682 P.2d at 1178. Therefore, we hold that the trial court properly instructed the jury on the relevant factors to determine first degree sexual assault.

### III.

Dunton also argues that the trial court should not have permitted the prosecutor to argue in closing argument that Dunton's lack of awareness of nonconsent had no bearing on the appropriate verdict. Dunton further contends that the trial court erred in holding that the defense could not argue that Dunton was not aware of the victim's nonconsent. Because of the insufficiency of the record on this issue, we cannot evaluate the validity of the trial court's ruling. However, we hold that even if the trial court's ruling was in error, the error was rendered harmless by defense counsel's closing argument.

■ The scope of final argument rests in the sound discretion of the trial court. *People v. Moody,* 676 P.2d 691, 697 (Colo. 1984). Its rulings thereon will not be disturbed by an appellate court in the absence of a gross abuse of discretion resulting in prejudice and denial of justice. *Id.; People v. Walters,* 821 P.2d 887, 890 (Colo.App.1991).

■ According to Dunton, the trial court ruled that defense counsel was precluded from arguing that Dunton was not aware

that the victim had not consented to engaging in sexual intercourse with the defendant. This ruling, however, occurred during an *in camera* conference on jury instructions, at which no record was made. After being convicted but before sentencing, Dunton filed a Motion to Supplement Record and for New Trial, in which he alleged:

7. The prosecution asked the court for authorization to argue to the jury that the Defendant's lack of awareness that the alleged victim did not consent had no bearing on the appropriate verdict, and for preclusion of defense counsel from arguing a contrary position.

8. The court ruled that the prosecution's request would be granted.

The record, however, does not contain the ruling to which reference is made. As the defendant acknowledges in the Motion to Supplement Record and for New Trial, "the statements of court and counsel regarding this issue are not adequately reflected in the record previously made," and these statements "took place in an informal atmosphere." Thus, we are unable to determine the actual nature and scope of the limitation imposed upon defense counsel. Therefore, we cannot determine whether the trial court erred because the record does not contain the trial court's ruling.

■ Assuming error in limiting the scope of defense counsel's argument, the actual arguments made by defense counsel would render the error harmless. The defense counsel provided extensive argument in his closing relating to the elements of the crime, particularly the application of physical force or physical violence. In closing, the defense presented its theory that the defendant had used no physical force or violence. Counsel argued that the lack of corroborating evidence cast doubt on the victim's credibility. The defense counsel specifically commented:

But they [the prosecution] do have to prove force or violence. So why did this sexual intercourse occur? Was it because she willingly went along with it, or was it because he used force against her? She says it wasn't because he threatened her with any kind of violence. It was because

he used force or violence. He's not charged with threatening. He's charged with using force or violence.

So if she had some injuries, if she had some bruises on her wrists which had been held above her head for 5 or 10 minutes as she was struggling desperately to get away from this man, then maybe there would have been some evidence for you to say, this helps, this helps to decide that there was force. Since there isn't any evidence, bruises on her wrists or any other physical injury, it makes it tougher for you to decide whether she was telling the truth about the force. And your job is to decide whether it has been proven beyond a reasonable doubt that he used force or violence.

So they don't have to prove that there was injury, but they do have to prove there was force or violence. And the absence of torn clothing, the absence of screams for help, the absence of any yelling, the absence of any injuries helps you decide that, because it's the lack of evidence in the case that you can also consider in deciding whether there is a reasonable doubt.

The closing argument allowed the jury to determine whether the evidence supported the element of application of physical force or physical violence. Thus, even if the trial court erred in restricting the scope of the defense's closing argument, defense counsel nevertheless argued that the victim consented or appeared to the defendant to have consented.

## IV.

In conclusion, we hold that the trial court was not required to provide an extra instruction requiring the prosecution to prove the defendant's subjective awareness of the victim's nonconsent. We also hold that any error by the trial court in limiting the scope of closing argument was harmless. The judgment of the court of appeals is affirmed.