The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Bruce **PLATT**, Defendant–Appellant.

No. 04CA1889.

Colorado Court of Appeals, Div. II.

May 17, 2007.

Certiorari Granted Nov. 26, 2007.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

John W. Suthers, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge STERNBERG.*

Defendant, Bruce Platt, appeals the judgment of conviction entered upon a jury verdict finding him guilty of sexual assault. We affirm.

## I.

■ Defendant first argues that the evidence is insufficient to support the jury's verdict. We disagree.

Defendant was charged with violating § 18–3–402(1)(b), C.R.S.2006, which provides: "Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if ... [t]he actor knows that the victim is incapable of appraising the nature of the victim's conduct...."

In assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

Here, the victim testified that she was sleeping on her couch when she was awakened by the sensation of her clitoris being rubbed and a finger being inserted into her vagina. The victim testified that, as this occurred, she "was becoming conscious of being caressed and ... was starting to come around." She assumed her boyfriend was the person doing the fondling, explaining that "we do that sometimes to wake each other up." However, when the victim "went to draw him close," she opened her eyes and was shocked to see defendant (who was living in the house as a guest). The victim screamed and kicked defendant.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

By the time a police officer responded to the scene, defendant had departed. When the officer called defendant, defendant said that he "did it, and expressed concern that he was going to prison." Following his arrest, defendant told the officer that the victim had been asleep on the couch and was "only wearing a pair of panties." Defendant said he became "concerned" that this "sight ... did not arouse him," and that he had "questions about his sexual orientation." Defendant told the officer that "he wanted to see if he could be aroused by further stimulation," and that he touched the victim with both hands for approximately two minutes.

Defendant told the officer that he and the victim had not previously had "sexual contact." When the officer asked defendant whether he and the victim had ever been involved in a romantic relationship, defendant replied: "Hell, no."

In a written statement, defendant elaborated on his sexual identity crisis and admitted, "I touched [the victim] with my hand and penetrated [sic] her with my finger."

In a recorded interview, defendant reaffirmed his previous statements, adding that he first touched the victim "over her underwear on her vagina." Defendant admitted the victim had remained asleep until he "digitally penetrated her," and that she had become "very" upset immediately after she awoke and realized what was occurring.

On appeal, defendant does not challenge the strength of this evidence. Instead, he argues that § 18–3–402(1)(b) requires proof the victim "suffered from a mental disease or defect such that her mind was unsound, weak, or feeble." We disagree.

Our task in construing a statute is to ascertain and give effect to the intent of the General Assembly. To determine that intent, we look first to the plain and ordinary meaning of the statutory language. *See People v. Dist. Court*, 713 P.2d 918 (Colo.1986).

■ When the language is clear and unambiguous, the statute must be construed as written, without resort to interpretive rules of statutory construction. *People v. Zapotocky*, 869 P.2d 1234 (Colo.1994).

Nothing in the plain language of § 18–3–402(1)(b) suggests the section is limited to cases involving victims who suffer from a mental infirmity. Nor do the three cases cited by defendant support such a construction.

*Wilkinson v. People*, 86 Colo. 406, 282 P. 257 (1929), on which defendant relies, is inapposite because in that case the defendant was specifically charged with raping a person "incapable through unsound mind of giving legal consent."

*People v. Gross*, 670 P.2d 799 (Colo.1983), was decided on much narrower grounds than defendant suggests. In *Gross*, the supreme court rejected a claim that the provision now set forth in § 18–3–402(1)(b)—which at that time was codified as § 18–3–403(1)(c)—was void for vagueness, observing:

> If a victim is incapable of understanding how her sexual conduct will be regarded within the framework of the societal environment of which she is a part, or is not capable of understanding the physiological implications of sexual conduct, then she is incapable of "appraising the nature of [her] conduct" under the language of the statute.

*People v. Gross, supra*, 670 P.2d at 801. Although we acknowledge this pronouncement could be construed as supporting the narrow construction advanced by defendant here, a contextual reading reveals the limited scope of the supreme court's holding. Because the victim in *Gross* was mentally retarded, the supreme court tailored its rebuttal of the defendant's constitutional claim to the facts at hand. Accordingly, we decline to interpret this refutation as an exhaustive enumeration of the reasons why a person who is subjected to a sexual intrusion or sexual penetration might be "incapable of appraising the nature of [his or her] conduct."

In *People v. Renfro*, 117 P.3d 43, 48 (Colo. App.2004), a division of this court upheld a conviction under § 18–3–402(1)(b) without stating why the eighty-year-old victim was unable to appraise the nature of her conduct. Although defendant represents to us that the victim in *Renfro* suffered from Alzheimer's disease, nothing in the opinion supports this assertion. In any event, assuming the victim

in *Renfro* suffered from some type of mental infirmity (a reasonable inference in light of the fact that the opinion summarizes the evidence without referencing a statement by the victim), *Renfro* does not address the question of whether § 18–3–402(1)(b) applies to sexual assaults committed against a victim who is unable to appraise the nature of her conduct because she is asleep.

 We acknowledge that a different subsection of § 18–3–402, by virtue of an accompanying definition contained in a separate section, specifically addresses sexual assaults committed against sleeping victims. *See* § 18–3–402(1)(h), C.R.S.2006 ("Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if ... [t]he victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented."); § 18–3–401(3), C.R.S.2006 (" 'Physically helpless' means unconscious, asleep, or otherwise unable to indicate willingness to act."). However, unlike § 18–3–402(1)(b), which focuses on the actor's awareness of the victim's *cognitive* incapability of appraising the nature of his or her own conduct, §§ 18–3–401(3) and 18–3–402(1)(h) are aimed at situations in which the actor is aware of the victim's *physical* helplessness, and of the victim's lack of consent to the sexual intrusion or penetration. Thus, we conclude the coexistence of subsections (b) and (h) of § 18–3–402(1) represents a reasoned legislative determination that, depending on the facts of a particular case, a victim who is partially asleep and incapable of appraising the nature of his or her own conduct may not necessarily be physically "unable to indicate willingness to act." Section 18–3–401(3); *cf. Tippins v. Walker,* 77 F.3d 682, 689 (2d Cir.1996)("consciousness and sleep form a continuum").

Moreover, the existence of § 18–3–402(1)(h) has no bearing on our plain reading of § 18–3–402(1)(b), because it is often the case that a single act is violative of more than one criminal statute (or more than one subsection within a single statute), and it is well established that it is the prosecution's prerogative to select the statute(s) or subsection(s) under which to proceed (subject to equal protection limitations not implicated in this case). *See People v. Prieto,* 124 P.3d 842, 845 (Colo.App.2005).

Accordingly, we conclude the evidence is sufficient to support the jury's verdict.

## II.

 Defendant next argues that the trial court erred by refusing to instruct the jury concerning the concept of consent, either as an affirmative defense or as part of his theory of defense. Again, we disagree.

The consent of the victim to conduct charged to constitute an offense is an affirmative defense if it negates an element of the offense. Section 18–1–505(1), C.R.S. [2006].

Whether there is credible evidence to support an affirmative defense is a question for the trial court to resolve. And, if there is credible evidence supporting the defense, the court must instruct the jury on the defense even if the supporting evidence consists of highly improbable testimony by the defendant.

However, a trial court is not required to give the jury an instruction defining an affirmative defense if proof of the elements of the charged offense necessarily requires disproof of the issue raised by the affirmative defense.

Under such circumstances, refusal of an affirmative defense instruction does not constitute error so long as the defendant is allowed to introduce evidence supporting the issue which is embodied in the affirmative defense.

*People v. Bush,* 948 P.2d 16, 18 (Colo.App.1997)(additional citations omitted).

 As noted above, § 18–3–402(1)(b) requires proof that the person causing the sexual intrusion or sexual penetration "knows that the victim is incapable of appraising the nature of the victim's conduct." Because a person who cannot appraise the nature of his or her conduct cannot validly consent to sexual intrusion or sexual penetration, proof of the elements of § 18–3–402(1)(b) necessarily constitutes proof of the absence of consent by the victim. Accordingly, we perceive no error in the trial court's refusal to instruct the

jury concerning the affirmative defense of consent.

Nor can we conclude the trial court erred by not allowing defendant to include an assertion of consent in his theory of defense instruction. Although the quantum of evidence that must be offered by the defendant in order to be entitled to an instruction on a theory of defense is exceedingly low, *see People v. Saavedra–Rodriguez*, 971 P.2d 223, 228 (Colo.1998) (a defendant is entitled to an instruction on a theory of defense if it supported by "a scintilla of evidence"), there is simply no evidence of consent in this record.

Contrary to defendant's suggestion, the evidence of the victim's "positive physical reactions" to sexual touching "during her states of semi-consciousness" does not constitute evidence of consent because defendant presented no evidence contradicting his own out-of-court statements in which he acknowledged that the victim had no reason to suspect he was the person touching her. Likewise, there was no evidence contradicting defendant's admission that the victim immediately recoiled and objected loudly when she regained full consciousness and discovered what he was doing. *See* § 18–1–505(3)(d), C.R.S.2006 ("Unless otherwise provided by this code or by the law defining the offense, assent does not constitute consent if ... [i]t is induced by ... deception.").

## III.

■ Finally, defendant contends his right to a speedy trial was violated. We are not persuaded.

At the outset, we note that, although defendant asserts his state and federal constitutional speedy trial rights were violated, he does not make any argument in support of this contention apart from his statutory speedy trial claim. Thus, we limit our analysis correspondingly. *See People v. Diefenderfer*, 784 P.2d 741, 752 (Colo.1989) ("[i]t is the duty of counsel for appealing parties to inform a reviewing court both as to the specific errors relied upon and as to the grounds, supporting facts and authorities therefor").

■ Colorado's speedy trial statute requires the dismissal of criminal charges if the defendant is not brought to trial within six months of the date a not guilty plea is entered. Section 18–1–405(1), C.R.S.2006; *People v. Arledge*, 938 P.2d 160 (Colo.1997). However the statute sets forth various exclusions:

> In computing the time within which a defendant shall be brought to trial as provided in [§ 18–1–405(1) ], the following periods of time shall be excluded:
>
> ...
>
> (b) The period of delay caused by an interlocutory appeal whether commenced by the defendant or by the prosecution;
>
> ...
>
> (h) The period of delay between the new date set for trial following the expiration of the time periods excluded by paragraph[ ] ... (b) ... of this subsection (6), not to exceed three months....

Section 18–1–405(6), C.R.S.2006; *see People v. Witty*, 36 P.3d 69, 75 (Colo.App.2000) (interpreting § 18–1–405(6)(h) as permitting an extension of the speedy trial period for up to three months from the expiration of an enumerated time period, provided that such a delay in setting the new trial is reasonable).

Although the parties disagree concerning the application of these exclusions, the following procedural facts are not in dispute.

Defendant entered his plea of not guilty on February 10, 2003.

Later that month, defendant tendered a six-month waiver of his speedy trial right in conjunction with a motion asking for a separate trial on the charge of failing to register as a sex offender. On April 18, the trial court accepted defendant's waiver, granted the bifurcation motion, and established a new speedy trial deadline of October 18.

On August 6, the prosecution filed an interlocutory appeal in the Colorado Supreme Court seeking review of the trial court's ruling granting defendant's motion to suppress certain statements.

On January 12, 2004, the supreme court reversed the trial court's ruling and issued

its mandate. *See People v. Platt*, 81 P.3d 1060, 1069 (Colo.2004).

At a January 30, 2004, status conference, the parties attempted to select a mutually convenient Monday on which to begin the trial. Defense counsel first proposed that the case be tried on February 9. However, the prosecutor stated that he had another trial scheduled for February 9, and suggested the case be tried on March 29 or April 12. In addition, the prosecutor informed the court that, while the case had been pending in the supreme court, the arresting officer had scheduled a vacation in New Zealand from February 15 through March 27.

Defense counsel told the court she was unavailable on March 29 due to a conflicting trial setting. Defense counsel agreed the speedy trial period would not expire until April 12, and she did not dispute the prosecutor's statement that she was unavailable on April 12 (defense counsel later disclosed that she, too, had planned a "trip abroad"). Reasserting her request for a February trial, defense counsel suggested the court allow the vacationing officer to testify telephonically.

The trial court rejected the idea of telephonic testimony, concluding that the logistics would be too difficult. In addition, the court explained that it was unavailable to try the case on April 5.

The trial court scheduled the trial for April 19, concluding that any delay beyond the expiration of the speedy trial period was "a reasonable period of time to be excluded because of what has happened in this case." In support of this finding, the court noted that the length of time necessary to resolve an interlocutory appeal was unpredictable, and that the length of the officer's vacation was reasonable in light of the distance he would be traveling and the fact that such a trip would be "real difficult to change."

On April 19, defendant moved to dismiss the charge on the ground that his statutory right to a speedy trial had been violated. That same day, the court denied the motion and began the trial.

On appeal, defendant argues that the speedy trial period expired on March 24. Defendant calculates this to be the relevant date by adding five months and six days—the length of time that the interlocutory appeal was pending from August 6, 2003, to January 12, 2004—to the original speedy trial deadline of October 18, 2003. However, the People contend defendant is foreclosed from making this argument because, at the status conference on January 30, 2004, defense counsel explicitly agreed that the delay "from the mandate to today's date was reasonable," and stated that "[t]here [were] two months and twelve days remaining on speedy trial" (the amount of time that remained when the prosecution filed the interlocutory appeal on August 6, 2003). Thus, according to the People, defendant has effectively conceded that the speedy trial deadline expired two months and twelve days from the January 30 status conference.

The supreme court has held that for purposes of § 18–1–405(6)(b), the parameters of the excludable period occasioned by an interlocutory appeal are determined by the date the notice of appeal was filed and the date the mandate issued. *See People ex rel. Gallagher v. Dist. Court*, 933 P.2d 583, 592 (Colo.1997); *People v. Hampton*, 696 P.2d 765, 772 (Colo.1985). Therefore, we agree with defendant that two months and twelve days of the original speedy trial period remained when the supreme court issued its mandate on January 12, 2004.

However, we further conclude that, due to the conflicting schedules of the attorneys, the arresting officer, and the court, it is reasonable also to exclude the full three-month period authorized by § 18–1–405(6)(b). In this regard, we agree with the trial court's consideration for the arresting officer's scheduled vacation, particularly because it is apparent the trial could have begun on April 12 if not for defense counsel's own scheduled vacation outside the country. *See People v. Pipkin*, 655 P.2d 1360, 1361 (Colo.1982)(to determine "reasonableness" for purposes of a statutory exclusion from the speedy trial period under § 18–1–405(6), "each case must be considered on its own facts").

Therefore, because § 18–1–405(6)(b) establishes an exclusion rather than a new speedy

trial deadline, we conclude the balance of the speedy trial period (of two months and twelve days) began to run again on April 12 (three months from the issuance of the mandate on January 12).

Because defendant's trial commenced within this period, we find no violation of the statute.

The judgment is affirmed.

Chief Judge DAVIDSON and Judge CRISWELL * concur.