Bruce PLATT, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 07SC573.

Supreme Court of Colorado,
En Banc.

Feb. 9, 2009.
Rehearing Denied Feb. 17, 2009.*

* Justice Hobbs, Justice Martinez and Justice Bend-er would grant the Petition.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Douglas K. Wilson, Public Defender, Shann Jeffery, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

Justice EID delivered the Opinion of the Court.

Petitioner Bruce Platt was charged with—and convicted by a jury of—one count of sexual assault under section 18–3–402(1)(b), C.R.S. (2008) ("subsection (b)"), which criminalizes sexual assault when "[t]he actor knows that the victim is incapable of appraising the nature of [her] conduct." On appeal, Platt argued that because the victim was asleep, he could only be charged with sexual assault under section 18–3–402(1)(h), C.R.S. (2008) ("subsection (h)"), which criminalizes sexual assault when "[t]he victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented." Section 18–3–401(3), C.R.S. (2008), defines "physically helpless" as "unconscious, *asleep,* or otherwise unable to indicate willingness to act." (emphasis added). As a result of the charging decision, Platt continued, he was improperly deprived of an opportunity to present a consent defense and to instruct the jury on consent.

The court of appeals affirmed Platt's conviction, *People v. Platt,* 170 P.3d 802, 803 (Colo.App.2007), and we now affirm the court of appeals. Platt's conduct involved a sleeping victim. Depending on the evidence, such conduct reasonably falls within two statutory provisions—subsection (b), involving victims who are cognitively unable to understand the nature of their conduct, and subsection (h), involving physically helpless victims. When a defendant's conduct reasonably falls within two statutes, the prosecution has discretion to select under which statute to proceed; the question then becomes whether there is sufficient evidence to support the conviction. Here, we find that there is sufficient evidence to support Platt's conviction under subsection (b) because the victim was asleep and thus unable to understand the nature of her conduct. Under our decision in *Dunton v. People,* 898 P.2d 571, 573–74 (Colo.1995), the requirement that the prosecution prove under subsection (b) that the victim was incapable of appraising the nature of her conduct at the time of the alleged assault necessarily "negates the existence of the victim's consent." *Id.* at 573. Therefore, while a defendant may introduce evidence that the victim was in fact capable of appraising the nature of her conduct, as Platt did in this case, he is not permitted to present a defense of consent *per se,* nor is he entitled to a jury instruction concerning consent. *Id.* We therefore find that Platt was not improperly deprived of an opportunity to present a consent defense or to instruct the jury on consent.

## I.

In 2002, Platt moved into a house shared by the victim and her boyfriend. One night in December 2002, the victim had fallen asleep on a couch in the house. She was awakened at 3:00 a.m. by Platt, who was

fondling her genital area and digitally penetrating her vagina. The victim was in a state of partial sleep. She initially thought that it was her boyfriend who was fondling her. When she opened her eyes, however, she realized immediately that it was Platt. She swore at Platt loudly and kicked him off of her. Platt left the house, but was quickly apprehended by the police and confessed to sexually assaulting the victim.

Platt was charged with one count of sexual assault under section 18–3–402(1)(b), which provides that "[a]ny actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits a sexual assault if ... [t]he actor knows that the victim is incapable of appraising the nature of [her] conduct." Prior to trial, the prosecution moved to amend this charge to section 18–3–402(1)(h), which criminalizes sexual assault of a victim who is "physically helpless," defined as "unconscious, asleep, or otherwise unable to indicate willingness to act." § 18–3–401(3). The People withdrew this motion, however, and Platt remained charged pursuant to subsection (b).[1]

At trial, the prosecution presented evidence that the victim was in a state of partial sleep and that Platt knew she was sleeping. The prosecution also produced a written statement by Platt in which he admitted that "I touched [the victim] with my hand and penitrated [sic] her with my finger." The prosecution further demonstrated that Platt admitted to the police in an interview that the victim had not given him "any hints that it would be okay to touch her," and he knew that the victim "would be angry ... if someone did that to her." The defense cross-examined the victim, who testified that she had initially enjoyed the touching and had allowed it to continue for several seconds before realizing that it was not her boyfriend who was touching her. She also testified that she "went to draw" Platt close to her, mistakenly thinking he was her boyfriend, but immediately realized he was not and

forcefully kicked him off of her. The trial court refused Platt's request that the jury be instructed on the defense of consent. The jury convicted Platt, and he was sentenced to six years imprisonment.

Platt appealed his conviction to the court of appeals, which affirmed. *Platt,* 170 P.3d at 803. The court of appeals reasoned that Platt's conduct could fall within either subsection (b) or (h), and that, because the victim was partially asleep, the evidence was sufficient to support his conviction under subsection (b). In addition, the court of appeals held that the trial court properly declined Platt's request that the jury be instructed on the defense of consent. *Id.*

We granted certiorari to consider whether a sleeping victim can be "incapable of appraising the nature of her conduct" under subsection (b).[2] We find that, depending on the evidence, a sexual assault involving a sleeping victim may reasonably fall under either subsection (b) or (h). When a defendant's conduct reasonably falls within two statutes, the prosecution has discretion to select under which statute to proceed; the question then becomes whether there is sufficient evidence to support the conviction. In this case, there was sufficient evidence to support Platt's conviction under subsection (b) because the sleeping victim was incapable of understanding the nature of her conduct. Under our decision in *Dunton v. People,* 898 P.2d 571, 573–74 (Colo.1995), proof that a victim is incapable of understanding the nature of her conduct necessarily negates the defense of consent. Therefore, while a defendant may introduce evidence that the victim was in fact capable of appraising the nature of her conduct, as Platt did in this case, he is not permitted to present a defense of consent *per se,* nor is he entitled to a jury instruction concerning consent. *Id.* at 573. We therefore affirm the court of appeals.

## II.

■ Subsection (b) criminalizes sexual assault when "[t]he actor knows that the victim

---

1. He was also originally charged with one felony count of failure to register as a sex offender, which was pled down to a misdemeanor of the same offense.

2. We granted certiorari on the following question: "Whether a sleeping victim is 'incapable of appraising the nature of her conduct' within the meaning of section 18–3–402(1)(b), C.R.S. (2007)."

is incapable of appraising the nature of [her] conduct." Subsection (h) criminalizes sexual assault when "[t]he victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented," with "physically helpless" defined as "unconscious, *asleep,* or otherwise unable to indicate willingness to act." § 18–3–401(3) (emphasis added). Subsection (b) addresses the situation in which a victim is *cognitively* unable to appreciate her conduct; in other words, it involves a victim who simply cannot understand what she is doing. By contrast, subsection (h) addresses the situation of a *physically* helpless victim.

■ In this case, Platt argues that the prosecution could *only* proceed under subsection (h) because that subsection specifically addresses a sleeping victim. We disagree. Platt's conduct falls squarely within the language of subsection (b), because a victim who is asleep may be cognitively "incapable of appraising the nature of [her] conduct." Platt's conduct could have also fallen under subsection (h), depending on the evidence, because a victim who is asleep may be "physically helpless." Subsections (b) and (h) are not mutually exclusive. Instead, the same conduct may, depending on the evidence, violate both sections. "It is . . . well established that a single act may give rise to the violation of more than one criminal statute." *People v. Owens,* 670 P.2d 1233, 1237–38 (Colo.1983).

The facts of this case illustrate how conduct can fall within both statutory provisions, depending on the evidence. Prior to trial, the prosecution moved to amend the charge against Platt to subsection (h), involving the sexual assault of a physically helpless victim, although the motion was withdrawn before trial. Had the prosecution continued to proceed under subsection (h), it would have been required to prove that the victim was "physically helpless," either because she was "unconscious," "asleep," or "otherwise unable to indicate willingness to act." § 18–3–401(3). Yet the victim in this case was not fully "asleep" nor was she unconscious, and she may or may not have been physically able "to indicate [her] willingness to act." In other words, had the prosecution proceeded under subsection (h), it might not have been able to prove that the victim was physically helpless. The prosecution also faced difficulties with regard to proceeding under subsection (b), in that it had to prove that the victim was in a sufficient state of sleep so as to be incapable of appraising the nature of her conduct.

■ When conduct reasonably falls within two statutes, the prosecution must be afforded discretion in choosing under which statute to charge the defendant. *See People v. Dist. Ct., In and For the Tenth Jud. Dist.,* 632 P.2d 1022, 1024 (Colo.1981). Here, the prosecution assessed the evidence and decided to proceed under subsection (b). The question then becomes, given the decision to proceed under subsection (b), whether there is sufficient evidence to support the conviction under subsection (b). We hold that evidence in this case—that the victim was partially asleep—was sufficient to support Platt's conviction under subsection (b), because a sleeping victim may be incapable of appraising the nature of her conduct.

■ Under Platt's interpretation, any time a victim is asleep—whether partially, fully, or something in between—a case must proceed under subsection (h). Yet this interpretation fails to recognize that there may be some cases where the victim, depending on the evidence, could arguably be both cognitively incapable of assessing her conduct (under subsection (b)) and physically helpless (under subsection (h)). The question in this case is not governed by the principle of statutory construction that a more specific statute trumps a more general statute. *See Bd. of County Comm'rs of Douglas County v. Bainbridge,* 929 P.2d 691, 698 (Colo.1996). Here, we have two equally specific statutes—one that addresses a victim who is cognitively unable to appreciate the nature of her conduct, and one that addresses a victim who is physically helpless. The fact that the statute lists a sleeping victim as an example of a victim who is physically helpless under subsection (h) does not mean that same victim cannot be cognitively unable to understand her conduct under subsection (b). Again, it depends on the evidence.

■ Platt also argues that his conduct could not fall under subsection (b) because

that section should be interpreted to apply only where the victim is incapable of understanding her conduct due to a mental impairment. He bases this argument on the statutory predecessor to subsection (b), which provided that "[a]ny male who has sexual intercourse with a female person not his spouse, commits gross sexual imposition if ... [h]e knows or reasonably should know that she suffers from *a mental disease or defect* which renders her incapable of appraising the nature of her conduct." § 40–3–402(1)(b), C.R.S. (1971) (emphasis added).

In 1975, the General Assembly repealed the law and reenacted it as section 18–3–403(1)(c), C.R.S. (1975), which contained virtually identical language to the present-day subsection (b).[3] The 1975 statute removed the "mental disease or defect" restriction altogether. *See id.*

Platt cites legislative discussions in 1975 to support the proposition that subsection (b) applies *only* to situations where the victim has a mental impairment. Somewhat counterintuitively, Platt argues that by expressly removing the "mental disease or defect" language, the General Assembly still intended to limit the section to victims with mental impairments.

We agree with Platt to the extent that subsection (b) *can apply* to instances where the victim has a mental impairment. However, we also believe that by specifically removing the mental impairment language from the statute, the General Assembly intended to broaden the section's applicability *beyond* situations involving mental impairment. As the statute now stands, it applies where the victim is "incapable of appraising the nature of [her] conduct"; in this case, the conduct in question falls comfortably within this statutory language.

■ Finally, Platt argues that the decision to charge him under subsection (b) improperly deprived him of his ability to present evidence of the victim's alleged consent—a defense that is expressly provided for in subsection (h). § 18–3–402(1)(h) (requiring the prosecution to prove that "[t]he victim is physically helpless and the actor knows the victim is physically helpless *and the victim has not consented* ") (emphasis added). In addition, he argues that the trial court should have instructed the jury on the defense of consent. Again, we disagree.

The Colorado sexual assault statute, section 18–3–402, defines and proscribes various conduct constituting sexual assault. In *Dunton,* the defendant argued that the jury should have been given "a special instruction requiring the prosecution to show his awareness of the victim's nonconsent." 898 P.2d 571, 572 (Colo.1995). We disagreed, reasoning that "[w]ith the exception of subpart [ (h) ], the ... statute prohibits conduct which by its very nature negates the existence of the victim's consent." *Id.* at 573. In other words, the "statute equates the victim's nonconsent with proof that the defendant has caused the victim's submission.... These acts of the defendant cause the victim to be unable to consent."[4] *Id.* at 573. Thus, with the exception of subsection (h), proof of all the elements of an offense under section 402 equates with proof of the victim's nonconsent.

Our reasoning in *Dunton* applies here. Under subsection (b), the prosecution must prove that the defendant "[knew] that the victim [was] incapable of appraising the nature of [her] conduct." Such proof necessarily negates any consent defense. We therefore agree with the court of appeals in this case that "[b]ecause a person who cannot appraise the nature of his or her conduct cannot validly consent to sexual intrusion or sexual penetration, proof of the elements of [subsection (b) ] necessarily constitutes proof of the absence of consent by the victim." *Platt,* 170 P.3d at 805. While a defendant may introduce evidence that the victim was in fact capable of appraising the nature of

---

**3.** In 2000, the General Assembly amended the statute to merge the varying degrees of sexual assault into section 18–3–402, C.R.S. (2000).

**4.** The sexual assault statute in place when we considered *Dunton,* § 18–3–402, C.R.S. (1995), did not yet contain subsection 402(1)(b), which merged into section 402 from section 18–3–403, C.R.S. (1975). Nonetheless, the analysis we used in *Dunton* is fully applicable to today's subsection 402(1)(b), which proscribes conduct that inherently negates any consent by the victim.

her conduct, as Platt did in this case, he is not permitted to present a defense of consent *per se,* nor is he entitled to a jury instruction concerning consent. The trial court thus properly refused to instruct the jury on consent, and instead correctly instructed the jury that it had to find that Platt acted "with knowledge that [the victim] was incapable of appraising the nature of her conduct."

Here, the relevant questions before the jury were whether "the victim [was] incapable of appraising the nature of [her] conduct," and whether Platt knew of her incapacity. The defendant admitted in statements to police that he knew that the victim was asleep when he began to assault her. He also admitted that the victim had not given him "any hints that it would be okay to touch her," and that he knew that the victim "would be angry . . . if someone did that to her." Indeed, the victim immediately kicked him away and swore at him loudly upon realizing it was Platt—not her boyfriend—who had been touching her. *See* § 18–1–505(3)(d), C.R.S. (2008) ("[A]ssent does not constitute consent if [it] is induced by force, duress, or deception."). Platt attempted to counter this evidence by eliciting cross-examination testimony of the victim stating that she had enjoyed the touching at first and had allowed it to continue for several seconds before realizing that it was Platt—not her boyfriend—who was touching her.

The prosecution was required to prove beyond a reasonable doubt that Platt "knew that the victim [was] incapable of appraising the nature of [her] conduct." Platt had an adequate opportunity to present evidence of the victim's alleged consent in his attempt to demonstrate that the prosecution had not met this burden. The jury considered the evidence and concluded that the prosecution had proven its case—thus negating any consent defense Platt might have had. We therefore find that the Platt was not improp-

erly deprived of his ability to present evidence of the victim's alleged consent, and that the trial court properly refused to instruct the jury on consent.[5]

## III.

We hold that there was sufficient evidence to support Platt's conviction under section 18–3–402(1)(b) because the victim was sleeping and therefore unable to understand the nature of her conduct. We also find that Platt was not improperly deprived of an opportunity to present a defense of consent or to instruct the jury on consent. We therefore affirm the court of appeals.

Justice HOBBS dissents, and Justice MARTINEZ and Justice BENDER join in the dissent.

JUSTICE HOBBS, dissenting:

I respectfully dissent. Criminal statutes must inform the public of the standards of conduct they impose and give warning of the acts they forbid. § 18–1–102(1)(a), C.R.S. (2008); *People v. Longoria,* 862 P.2d 266, 270 (Colo.1993); *People v. Gross,* 670 P.2d 799, 800 (Colo.1983). This requirement is rooted in the right to due process of law. *People v. Shell,* 148 P.3d 162, 172 (Colo.2006).

The broader consequences of the majority's holding are troubling, and surely do not comport with the General Assembly's intent. *See* § 2–4–203(1)(a), (e), C.R.S. (2008) (if statutory language is ambiguous, we may consider the consequences of a given interpretation and the goals the General Assembly sought to achieve); *People v. Rockwell,* 125 P.3d 410, 417 (Colo.2005). The majority's construction of the statutory provision under which Platt was convicted permits a jury to convict a person of a class IV felony, even though the sexual contact was consensual, because the person giving consent was not fully awake. This construction is an absurd result that is contrary to the General Assembly's intent, in

---

**5.** At oral argument, counsel for defense argued that if conduct involving sleeping victims were permitted to fall within subsection (b), it would be possible to convict a defendant of sexually assaulting a sleeping victim even though the victim had consented to such touching. This is not the case. Where such a "victim" has consented

to the touching, then that "victim" would not be "incapable of appraising the nature of [her] conduct" because the "conduct" at issue would be exactly what she had consented to—sexual activity between consenting individuals—and the prosecution would thus be unable to present sufficient evidence under subsection (b).

light of the General Assembly's provision of a separate statutory offense applicable to the sexual assault of a sleeping victim. *See City of Commerce City v. Enclave West, Inc.*, 185 P.3d 174, 179 (Colo.2008) (we eschew absurd results in statutory interpretation).

The two statutory subsections at issue in this case are subsection 18–3–402(1)(b), C.R.S. (2008), and subsection 18–3–402(1)(h), C.R.S. (2008). The fact that Platt was charged under subsection (b) rather than subsection (h) affected Platt's trial in three significant ways: (1) the prosecutor was not required to prove the statutory elements that the victim did not consent and that Platt knew the victim did not consent; (2) Platt was not permitted to raise consent as an affirmative defense pursuant to section 18–1–505(1), C.R.S. (2008); and (3) Platt was not permitted to include the issue of consent in his theory of the case jury instruction.[1]

Subsection (b) provides: "(1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if: ... (b) The actor knows that the victim is incapable of appraising the nature of the victim's conduct."

Subsection (h) provides: "(1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if: ... (h) The victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented." Section 18–3–401(3), C.R.S. (2008), defines "physically helpless" as "unconscious, *asleep*, or otherwise unable to indicate willingness to act." (Emphasis added).

The prosecutor initially charged Platt under subsection (b), then moved to amend the charge to subsection (h). The prosecutor then withdrew this motion on the first day of trial and went forward on subsection (b).

The net effect of the prosecutor's decision to charge Platt under subsection (b) was to remove the issue of consent from the case, causing significant prejudice to Platt's ability to defend himself and contradicting the General Assembly's intent in adopting the two subsections that contain differing elements the prosecution must prove. Plainly, the facts of the case are critical to which statutory provision applies.

## I.

## Removal of the Consent Element from this Case

The primary goal in statutory interpretation is to ascertain and effectuate the General Assembly's intent, and we begin this task by examining the plain meaning of the statutory language. *People v. Flippo*, 159 P.3d 100, 104 (Colo.2007); *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo.2004). In addition to considering the plain meaning of a statutory provision, we attempt to construe a statute so as to give consistent, harmonious, and sensible effect to all of its parts, resolving ambiguity in the legislature's intended operation of potentially conflicting statutes. *See People v. Thompson*, 181 P.3d 1143, 1145 (Colo.2008).

The language of subsection (b), read in conjunction with subsection (h), suggests that the General Assembly did not intend for subsection (b) to be used to charge a sexual assault of a sleeping or partially asleep victim who is not otherwise impaired so as to be incapable of appraising his or her conduct.[2] Subsection (h) directly proscribes the sexual assault of a sleeping victim, because subsection (h) (referencing section 18–3–401(3)) defines "physically helpless" to include being "asleep." This explicit reference to sleep

---

1. Platt moved twice for acquittal on the grounds that the prosecutor charged him under the wrong statutory provision. The trial court denied both motions. The trial court submitted to the jury the following theory of the case instruction, which did not include the element of consent that Platt had requested: "It is Mr. Platt's theory of the case that [the victim] was awakened by his touching of her thigh. It is further Mr. Platt's contention that the touching of [the victim] was not for the purpose of sexual arousal, gratification, or abuse."

2. The majority suggests that Platt's argument fails to acknowledge that in some cases a victim may be both mentally impaired and physically helpless. Maj. op. at 548. In my view, if a defendant allegedly sexually assaults a victim who is both physically helpless and incapable of appraising the nature of his or her conduct, the prosecutor may charge the defendant under either subsection (b) or subsection (h).

stands in stark contrast to the ambiguous language used in subsection (b) referring to the victim's capability of appraising his or her conduct.[3] Subsection (b) makes no direct or even oblique reference to sleep. Instead, the majority improperly attempts to read the word "asleep" into a provision where it cannot be found. *See* Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 47:38 (7th ed. 2008) (missing words should not be supplied by courts to clarify ambiguous or missing language).

The majority holds that prosecutors properly charged Platt under subsection (b) for the alleged sexual assault of a partially sleeping victim. The majority reasons that "[s]ubsection (b) addresses the situation in which a victim is *cognitively* unable to appreciate her conduct" and that "Platt's conduct falls squarely within the language of subsection (b), because a victim who is asleep may be cognitively 'incapable of appraising the nature of [her] conduct.' " Maj. op. at 547–48.

In my view, the only proper charge in this case is the violation of subsection (h), not subsection (b). The General Assembly clearly set forth subsection (h) as the appropriate provision for charging a defendant with sexual assault of a person in various states of sleep. In doing so, the General Assembly required prosecutors, in circumstances involving sleep, to prove that the victim did not consent and that the defendant knew the victim did not consent. The General Assembly also made consent available as an affirmative defense under subsection (h). *See* § 18-1-505(1).

By holding that prosecutors may charge defendants in this type of case using subsection (b), under which consent is irrelevant, the majority effectively holds that a person cannot consent to sexual contact before falling asleep, while partially asleep, or before fully awakening. The meaning of the phrase "incapable of appraising the nature of [one's] conduct" in subsection (b) particularly ill-fits the situation where a victim is between being fully asleep or fully awake, the facts of Platt's case.

The victim here was not impaired by any disease or defect rendering her "incapable" of consenting within the meaning of subsection (b); instead, she was mistaken about who was touching her, as she had her eyes closed during the touching. Subsection (h) consent is therefore the issue, rather than subsection (b) incapability. The victim's testimony indicated that sexual touching by her boyfriend while she was partially asleep would have been acceptable. When she opened her eyes, she discovered not her boyfriend but Platt, and kicked him away.

The majority's decision disregards our duty to avoid a statutory construction that would render other statutory provisions meaningless. *See People v. Terry*, 791 P.2d 374, 376 (Colo.1990). The legislature meant what it said when it fashioned subsection (h) to address circumstances in which a state of sleep is at issue. Subsection (b) should be used where a victim suffers from an impairment rendering a person incapable of consenting, for example, a mental impairment. In *Gross*, we held:

> If *a victim is incapable of understanding how her sexual conduct will be regarded within the framework of the societal environment of which she is a part, or is not capable of understanding the physiological implications of sexual conduct,* then she is incapable of 'appraising the nature of [her] conduct' under the language of the statute.[4]

670 P.2d at 801 (emphasis added).[5]

Platt was improperly charged because his conduct did not violate subsection (b).

**3.** The principle of statutory construction that a more specific statute trumps a general statute does not apply here. *See* maj. op. at 548–49 (citing *Bd. of County Comm'rs of Douglas County v. Bainbridge*, 929 P.2d 691, 698 (Colo.1996)). Our precedent makes clear that enactment of a specific criminal statute does not necessarily preclude prosecution under a general criminal statute if the defendant's conduct violates both statutes. *See, e.g., People v. Smith*, 938 P.2d 111, 115 (Colo.1997); *People v. Bagby*, 734 P.2d 1059, 1061 (Colo.1987). Instead, I would hold that

**4.** We need not address in this case whether subsection (b) can extend to situations in which a victim is temporarily impaired, such as through the use of alcohol or drugs. Nevertheless, *see Fletcher v. People*, 179 P.3d 969, 971–72 (Colo.2007), where we affirmed a defendant's conviction under subsection (b) when the defendant had sexually assaulted a victim who was extremely intoxicated.

In the past, sexual assaults of sleeping or partially asleep victims not otherwise incapable of appraising their conduct within the meaning of subsection (b) appear to have been consistently charged under subsection (h). *See, e.g., People v. Garcia,* 169 P.3d 223, 225, 229 (Colo.App.2007) (the defendant was charged under subsection (h) for sexually assaulting a woman who awoke to find the defendant having sexual intercourse with her, but mistakenly thought the defendant was her boyfriend; the guilty verdict was reversed on grounds related to improper admission of evidence); *People v. Hoskay,* 87 P.3d 194, 196, 199 (Colo.App.2003) (the defendant was charged and convicted under subsection (h) for sexually assaulting another man who was asleep); *People v. Watson,* 53 P.3d 707, 710, 712 (Colo.App.2001) (the defendant was charged and convicted under subsection (h) for sexually assaulting a woman who awoke to find the defendant attempting to have anal intercourse with her and who did not fully realize what was happening when the defendant began to have vaginal intercourse with her).

In my view, it is not necessary to consult legislative history here because it is apparent under the facts of this case that prosecutors should have charged Platt under subsection (h) and the case could properly go to the jury under this subsection only, not under subsection (b).

However, I note that my reading of legislative history does not support the majority's conclusion that "by specifically removing the mental impairment language from the statute, the General Assembly intended to broaden the section's applicability *beyond* situations involving mental impairment." Maj. op. at 549. The other change to section 18–3–402 the General Assembly made in 1975 was the addition of gender-neutral language. It is possible that, in the same theme, the General Assembly merely intended to remove potentially offensive terminology concerning mental impairments by removing the phrase "mental disease or defect." Alternatively, the General Assembly may have decided that this phrase was too narrow, or it may have intended to extend subsection (b) to temporary impairment caused by consumption of alcohol or drugs.

In any event, whether for the reasons explored above or other reasons, the General Assembly appears to have intended that subsection (b) apply to impairment involving something other than a state of sleep. This legislative intent is evidenced by committee reference to subsection (b) as the "mental disease or defect" subsection and as the provision that would apply where "the victim suffers from a disease which renders the victim incapable of appraising the nature of the victim's conduct." *See* Hearing on H.B. 1042 Before the H. Judiciary Subcomm., 1975 Legis., 50th Gen. Assemb., 1st Reg. Sess. (Mar. 13, 1975); Hearing on H.B. 1042 Before the H. Judiciary Comm., 1975 Legis., 50th Gen. Assemb., 1st Reg. Sess. (Mar. 18, 1975). In my view, the legislative history does not support the majority's holding.

## II.

### Prejudicial Effect

The most troubling implication of the majority's decision is that the state can charge a subsection (b) crime against a person who engages in consensual sexual touching with a partially asleep or sleeping partner.[6] In charging such a crime, the state would be under no obligation to demonstrate nonconsent as a predicate for the offense, and the affirmative defense of consent would not be available to the partner charged. There are numerous conceivable situations in which a person would not fully awaken during "sexual intrusion" or "sexual penetration," given the broad definitions of those terms.[7] Under the

---

5. The *Gross* opinion addressed the former section 18–3–403, C.R.S. (2001), which was codified in 2002 at section 18–3–402(1)(b), C.R.S. (2008).

6. Indeed, the state conceded at oral argument that it could have prosecuted the victim's boyfriend under subsection (b) if he had initiated consensual sexual contact with the victim.

7. "Sexual intrusion" is defined as "any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue, or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse." § 18–3–

majority's construction of the statute, any person who wants to initiate sex with a partner who is partially asleep will need to fully awaken that partner prior to sexual contact in order to avoid a possible charge and conviction under subsection (b).[8] Given these ramifications, the legislature could not have contemplated vesting the jury with such authority to convict under subsection (b) in these circumstances.

The General Assembly's intent is evident in the statutory design, because subsection (h) requires a prosecutor to prove that the victim did not consent and that the defendant has reason to believe that the victim did not consent. *See* § 18–3–402(1)(h) ("The victim is physically helpless and the actor knows the victim is physically helpless *and the victim has not consented.*") (emphasis added); *Dunton v. People*, 898 P.2d 571, 573 n. 3 (Colo. 1995) ("Subpart *[h]* ... *does require the actor to be aware of the victim's physical helplessness and lack of consent.* Because no affirmative acts are necessary to cause submission of a physically helpless victim, *subpart [h] requires proof of the victim's nonconsent.*") (emphasis added).[9] In addition, section 18–1–505(1) provides that "consent of the victim" is an affirmative defense to conduct charged if "the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense."

By including the element of nonconsent in subsection (h), the General Assembly demonstrated its sensible judgment that a person who is partially asleep or partially awake, or even fully asleep, can consent to sexual contact. In contrast, the General Assembly did not require prosecutors charging a defendant under subsection (b) to prove the victim did not consent, in order to protect persons in-

capable of consenting by reason of an impairment. Thus, we have previously observed that effective consent is impossible for sexual assaults covered by subsection (b), for instance, where a victim is mentally disabled. *Cf. Wilkinson v. People*, 86 Colo. 406, 412, 282 P. 257, 259 (1929).

The majority finds that Platt was not prejudiced by the prosecutor's decision to charge him under subsection (b), rather than subsection (h). The majority reasons that Platt presented evidence of the victim's alleged consent in arguing that the prosecution had not proven the victim was incapable of appraising the nature of her conduct. Maj. op. at 549–50. Such a construction of the statutory provisions at issue is inconsistent with the wording of the two subsections, which differentiate situations where a victim is impaired from situations where a victim is sleeping.

The elements of the crime are all-important to statutory construction and due process.

> It is well established that a criminal conviction may only ensue upon proof beyond a reasonable doubt of every element constituting the crime charged. A corollary to this principle is that members of a jury must be adequately instructed to enable them to assess whether every element of an offense has been proved beyond a reasonable doubt.

*Chambers v. People*, 682 P.2d 1173, 1175 (Colo.1984) (internal citations omitted).

The record in this case demonstrates prejudice to Platt. The victim testified at trial that she enjoyed the touching, and that she reached out to pull Platt closer before she realized who he was.[10] As we noted in our

---

401(5), C.R.S. (2008). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, analingus, or anal intercourse.... Any penetration, however slight, is sufficient to complete the crime." § 18–3–401(6).

8. For example, if a person briefly inserts a finger into the vagina of a partially asleep partner, and the partner responds positively without fully awakening, the person could be found guilty of sexual assault under subsection (b) without having the opportunity to demonstrate that the partner consented.

9. As the majority opinion notes, the current subsection (h) was referred to as subsection (e) when we decided *Dunton*. Maj. op. at n. 4.

10. In this case, the victim's testimony demonstrated that, despite being less than fully awake, she was conscious enough to appraise the sexual contact as acceptable because she thought her boyfriend was touching her. As demonstrated by footnote 5 of its opinion, maj. op. at 550, the majority transforms this case of mistaken identity into a subsection (b) offense. The majority reasons that, had the victim known that Platt, rather

prior decision, *People v. Platt*, 81 P.3d 1060, 1063 (Colo.2004), Platt and the victim lived in the same house at the time. It is possible the jury could have found that the victim's reactions constituted consent, or that Platt reasonably believed that she was consenting; alternatively, the jury could have found that she did not consent. In any event, this is a jury question that was precluded in this case. After moving to amend the charge to properly charge Platt under subsection (h), the prosecution withdrew its motion on the first day of trial, thereby removing the consent element from the case. The trial judge proceeded, based upon the subsection (b) charge, to refuse Platt's theory of defense and affirmative defense instructions that included the consent element. This is a miscarriage of justice given the facts of this case.

## III.

### Reversal of the Conviction and Dismissal of the Charge Should Occur

Accordingly, I conclude that reversal of the conviction and dismissal of the charge should occur in this case.[11] Thus, I respectfully dissent.

I am authorized to state that Justice MARTINEZ and Justice BENDER join in this dissent.

---

than her boyfriend, was touching her, she would have been "incapable" of consenting. In my view, such a result-oriented construction of the statute simply ignores the plain fact that the General Assembly has addressed just such a situation in subsection (h).

11. In my view, federal and state double jeopardy protections would prohibit a second prosecution of Platt. U.S. Const. amend. V; Colo. Const. art. II, § 18; *see People v. Leske*, 957 P.2d 1030, 1035 n. 5 (Colo.1998).